(No. 73572█

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANTHONY GUEST, Appellant.

*Opinion filed May 18, 1995.—Rehearing denied October 2, 1995.*

Nancy Albert-Goldberg and Marshall J. Hartman, both of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, James E. Fitzgerald and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

This matter comes before the court on defendant's appeal from the dismissal of his post-conviction petition. After a bench trial in Cook County, defendant was found guilty of one count each of intentional murder, knowing murder, felony murder, attempted murder, and aggravated battery, and two counts of unlawful use of a weapon. The trial judge found defendant eligible for the death penalty and sentenced defendant to death. On direct appeal, this court vacated the knowing and felony murder convictions because they arose from the same death as the intentional murder conviction. (*People v. Guest* (1986), 115 Ill. 2d 72, 103-04.) This court affirmed the remainder of defendant's convictions and the death sentence, and the United States Supreme Court denied defendant's petition for a writ of *certiorari* (*Guest v. Illinois* (1987), 483 U.S. 1010, 97 L. Ed. 2d 746, 107 S. Ct. 3241).

On January 29, 1988, defendant filed a *pro se* petition for post-conviction relief. (See Ill. Rev. Stat. 1987, ch. 38, par. 122—1.) The circuit court appointed counsel to aid defendant with the petition, and counsel filed a supplementary post-conviction petition. After the State

filed a motion to dismiss, the circuit court dismissed the post-conviction petition without an evidentiary hearing. Defendant appeals dismissal of the post-conviction petition (134 Ill. 2d R. 651(a)), seeking alternatively a new trial, a new sentencing hearing, or remand for an evidentiary hearing on his post-conviction petition.

## FACTS

We first summarize the evidence introduced at trial which led to defendant's convictions and sentence. On February 5, 1981, defendant and a friend, John Marlow, entered a Jewel grocery store in Chicago. The security guard at the store, Ferrice King, saw defendant take some toothpaste and a toothbrush and put them in his pocket. King approached defendant, identified himself as a security guard, and told defendant to accompany him to King's office, which was located in the basement of the store. In the basement, King indicated that he was going to search defendant for the items that were taken. Defendant offered to return the items. Defendant reached into his pocket and pulled out a handgun.

In response, King told defendant he could keep the items and walked away from defendant. King walked into the employees' cafeteria, which is also located in the basement, with defendant following him. At that time, three employees—Joanne Bailey, Marlean Washington, and Gary Henderson—were present in the cafeteria. These three employees saw defendant with a gun, and some of them tried to flee. Defendant fired a shot but did not hit any of these employees. King then pulled out his own handgun, exchanged several shots with defendant, and was shot once in the shoulder by defendant and injured slightly. Defendant fled and escaped. A short time later, John Geever, another store employee, was found in the basement of the store with a gunshot wound and later died from this gunshot wound. None of the store employees had seen Geever during the shooting, and none had seen how he was shot.

After the shooting, King detained Marlow, the individual who accompanied defendant to the store. Marlow provided the police with information that established the identity of the gunman as defendant. On the day after the shooting, employees King, Bailey, Washington, and Henderson all identified defendant's picture from a photo array. Nearly a year later, defendant was located and charged with this murder. Defendant had been arrested on an unrelated charge in Missouri. King and Washington identified defendant from a lineup before trial, and King and Bailey identified defendant as the gunman at trial.

## POST-CONVICTION PETITION

The purpose of a post-conviction proceeding is to determine if constitutional violations occurred at trial. A post-conviction proceeding is not an appeal of a defendant's convictions and sentence, and a defendant cannot merely allege that errors occurred at trial. Instead, a defendant bears the burden of establishing a substantial deprivation of his constitutional rights. (*People v. Albanese* (1988), 125 Ill. 2d 100, 104-05.) In addition, the doctrines of *res judicata* and waiver limit the issues that may be raised in a post-conviction petition. *People v. Thompkins* (1994), 161 Ill. 2d 148, 157-58.

In this case, the trial judge dismissed the petition without an evidentiary hearing. We note that a defendant is not entitled to an evidentiary hearing as a matter of right. (*People v. James* (1986), 111 Ill. 2d 283, 291.) A defendant is entitled to an evidentiary hearing only if the defendant has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. (*People v. Gaines* (1984), 105 Ill. 2d 79, 91-92.) The trial court's determination on this matter will not be disturbed unless manifestly erroneous. *People v. Griffin* (1985), 109 Ill. 2d 293, 303.

On appeal to this court, defendant alleges that he is

entitled to post-conviction relief based primarily on claims of ineffective assistance of trial counsel. These claims are based on defendant's sixth amendment right to counsel under the Federal Constitution. To be successful, defendant must satisfy the two prongs of the *Strickland* test. (See *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Under *Strickland*, a defendant must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance resulted in prejudice to defendant. If defendant fails to make a sufficient showing of either prong, this court need not consider the remaining prong. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

With respect to several of these claims of ineffective assistance of trial counsel, the State argues that defendant has waived these issues by failing to raise them on direct appeal. The State correctly notes that all of the facts needed to raise several of these claims were present in the record and available to defendant on direct appeal. Defendant has not introduced any new material in this proceeding to support these allegations of ineffective assistance of trial counsel.

Defendant acknowledges that he could have raised several of his contentions on direct appeal but argues that his appellate counsel was ineffective for failing to address the issue on direct appeal. This court has relaxed the waiver rule when the waiver arises from the ineffectiveness of appellate counsel. (See *People v. Barnard* (1984), 104 Ill. 2d 218, 229-31.) We further note appellate counsel can decline to raise an issue if he believes it to be without merit. To determine if appellate counsel could reasonably have decided not to allege trial counsel's ineffectiveness, we will focus on trial counsel's performance. *People v. Caballero* (1989), 126 Ill. 2d 248, 271.

In this appeal, defendant claims that his trial counsel was ineffective because trial counsel failed to: (1) present a viable theory of defense and, in effect, conceded defendant's guilt; (2) investigate and challenge identification evidence that established defendant as the perpetrator; (3) investigate prosecution witnesses and potential alibi witnesses; (4) investigate certain physical evidence; (5) object to leading questions; and (6) investigate mitigating witnesses and adequately prepare for the sentencing hearing. Defendant also raises an issue with respect to the performance of post-conviction counsel. Defendant claims that his post-conviction counsel's performance was inadequate because (7) post-conviction counsel failed to interview certain witnesses and provide affidavits needed to support the post-conviction petition.

## I. Trial Counsel's Defense Strategy

Defendant first argues that his trial counsel based the entire theory of defense on a misunderstanding of the felony murder rule. According to defendant, counsel believed defendant could be found guilty of felony murder only if defendant fired the shot that killed the victim. Defendant argues that counsel's strategy had no chance of success because defendant could also be found guilty of felony murder if the security guard, and not defendant, fired the shot that killed the victim. See *People v. Chandler* (1989), 129 Ill. 2d 233 (counsel was ineffective because counsel's theory of defense was based on a misunderstanding of the law of accountability and felony murder).

Defendant's allegation that his trial counsel misunderstood the felony murder rule is simply not supported by the record. At trial, counsel argued that the State failed to meet its burden of proving defendant guilty of murder or felony murder beyond a reasonable doubt. This strategy was based on the security guard's testi-

mony that he heard defendant fire three shots. One of these shots hit a garbage can in the cafeteria, another shot hit the security guard in the shoulder, and the final shot was fired at the security guard and in a direction opposite from where the victim was found. The security guard heard no further shooting as defendant was escaping. In closing argument, the State argued that defendant shot the victim while escaping, even though this was contrary to the security guard's testimony. At trial, the security guard's testimony was the only evidence of the number of shots fired by defendant and accounted for all the bullets fired by defendant.

In addition, the State introduced a ballistics test showing that the bullet that killed the victim did not come from the security guard's gun. Counsel used this ballistics test to account for all of the bullets fired by the security guard. Thus, counsel argued that the State itself had accounted for all of the bullets fired during the confrontation, and none of these bullets could have killed the victim. Counsel argued that the State had failed to prove the causal connection between the shooting confrontation and the victim's death. (See *People v. Gacho* (1988), 122 Ill. 2d 221, 243-45; *People v. Brackett* (1987), 117 Ill. 2d 170, 176.) Accordingly, counsel argued, the State had failed to meet its burden of proof. At no time did counsel argue that defendant could be convicted of felony murder only if defendant himself fired the fatal gunshot. Defendant's argument that counsel misunderstood the felony murder rule is based on passages from the record that are taken out of context.

In a related argument, defendant contends that, even if trial counsel properly understood the felony murder rule, counsel's strategy was the "functional equivalent of a guilty plea" to murder and felony murder. (See *People v. Hattery* (1985), 109 Ill. 2d 449, 458.) Defendant argues that counsel should have challenged the State's

evidence, which showed defendant's presence at the grocery store and defendant's armed confrontation with the security guard. According to defendant, once counsel pursued his defense theory, the trial judge had no alternative but to conclude that defendant was guilty of murder and felony murder. Essentially, defendant argues, counsel should have adopted a better theory of defense.

Defendant cites certain parts of the record in support of his argument that trial counsel's theory of defense was inadequate. In the opening statement, counsel conceded that defendant was present at the Jewel store and fired his gun at the security guard. Counsel acknowledged that defendant committed aggravated battery based on the shooting of the security guard. During trial, counsel entered into a number of stipulations with the State. Some of these stipulations included identification by the eyewitnesses at the Jewel store who, according to the police reports, had seen defendant. Counsel also stipulated to a firearms examiner's opinion that the bullet that killed the victim did not come from the security guard's gun.

Initially, we note that review of counsel's performance is deferential. As the Supreme Court stated:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of rea-

sonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.)

We also note that the choice of defense theory is ordinarily a matter of trial strategy, and counsel has the ultimate authority to decide this trial strategy. (See *People v. Ramey* (1992), 152 Ill. 2d 41, 53-55.) This court will generally not review a claim of ineffectiveness of counsel based on inadequate trial strategy. *People v. Palmer* (1994), 162 Ill. 2d 465, 479-80.

This court, however, has recognized an exception where counsel entirely fails to conduct any meaningful adversarial testing. (*Hattery*, 109 Ill. 2d at 464, citing *United States v. Cronic* (1984), 466 U.S. 648, 656, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045.) In *Hattery*, the defendant pleaded not guilty to the murders of a mother and her two children. In spite of these not-guilty pleas, counsel conceded that defendant committed the murders during opening argument and was eligible for the death penalty. Counsel stated that the only issue in the case was whether the defendant should receive the death penalty. In *Hattery*, counsel failed to present a theory of defense, failed to present evidence, failed to make closing argument, and did not hold the State to its burden of proof. Instead, counsel argued that the defendant's conduct in committing the crimes was the result of compulsion. Compulsion may be a mitigating circumstance when a defendant is eligible for the death penalty, but it is not a defense to murder. This court held that counsel's conduct was *per se* ineffective because counsel unequivocally conceded the defendant's guilt to the murder charges and eligibility for the death penalty.

In *People v. Johnson* (1989), 128 Ill. 2d 253, this court stated that the holding of *Hattery* must be construed narrowly. In *Johnson*, counsel conceded the defendant's

guilt for murder but contested the charge of felony murder which would make the defendant eligible for the death penalty. Counsel was not ineffective because counsel "asserted a theory of defense to a number of charges, not just a theory of mitigation, and this theory was pursued during opening and closing arguments and during cross-examination." (*Johnson*, 128 Ill. 2d at 270.) Counsel did not abandon the defense of the defendant.

The court also stated that counsel's concession of guilt does not constitute "*per se* ineffectiveness whenever the defense attorney concedes his client's guilt to offenses in which there is overwhelming evidence of that guilt." (*Johnson*, 128 Ill. 2d at 269.) Counsel would lose credibility by contesting all the charges. See also *People v. Fair* (1994), 159 Ill. 2d 51 (counsel argued that, although the defendant may be guilty of murder, the defendant did not have the intent required to support conviction for first degree murder); *People v. Horton* (1991), 143 Ill. 2d 11 (counsel's trial strategy was not ineffective in stipulated bench trial where counsel only contested those charges that were not supported by overwhelming evidence); *Caballero*, 126 Ill. 2d 248; *United States v. Simone* (7th Cir. 1991), 931 F.2d 1186 (counsel conceded the defendant's guilt to lesser drug charges but contested charges which carried greater punishment).

In this case, counsel did conduct meaningful adversarial testing of the State's case. As noted, counsel presented a theory of defense that required the State to prove its case beyond a reasonable doubt. Counsel used the security guard's testimony and the ballistics test to argue that the State had failed to meet its burden of proof. Counsel pursued this theory during trial and during opening and closing arguments. Counsel also cross-examined the State's witnesses in a manner consistent with this theory. At no time did counsel concede that

defendant was guilty of murder or felony murder or abandon defendant's defense. Contrary to the facts in *Hattery*, counsel pursued a theory of innocence.

In addition, before trial and during trial counsel repeatedly challenged the State's failure to produce the bullet that injured the security guard. At trial, the security guard testified that he was shot in the shoulder by defendant. While he was being treated at a hospital, the security guard saw a uniformed police officer take possession of the bullet. The State, however, was unable to produce this bullet at trial. Counsel made a motion to dismiss the murder counts, a motion for mistrial, and a motion for a new trial based on the State's failure to produce the bullet. Counsel argued that a ballistics test could be performed to see if the bullet that killed the victim matched the bullet that injured the security guard. The trial judge ultimately denied the motions after several police officers testified that they had never seen any such bullet.

When faced with overwhelming evidence, counsel faces a difficult task. Here, counsel pursued a strategy consistent with defendant's pleas of not guilty to murder and felony murder. Counsel challenged the State's case based on the State's alleged loss of physical evidence and failure to meet the burden of proof. Although counsel's motions and defense theory were unsuccessful, counsel subjected the State's case to meaningful adversarial testing.

## II. Identification Evidence

Defendant next argues that trial counsel was ineffective in failing to challenge the identification evidence presented by the State. Essentially, defendant argues that counsel should have challenged the State's photo-array evidence, lineup evidence, and in-court identifications. According to defendant, counsel should have filed a motion to suppress the photo-array and lineup identifications.

In support of the post-conviction petition, defendant submitted police reports. These police reports show that, after the shooting, the security guard detained John Marlow, the individual who accompanied the gunman to the store. After the police arrived, Marlow told the police that he knew the gunman only as T.J. and led the police to Mazell Howard. Howard stated that T.J. was a relative named Anthony, whose mother lived in St. Louis. On the day after the shooting, the police determined that defendant was the individual named Anthony as described by Marlow and Howard.

After determining the identity of the gunman as Anthony Guest, defendant herein, the police showed a photo array to King and the three employees—Bailey, Henderson, and Washington—who witnessed the armed confrontation. These four individuals selected defendant's photo from the array but noted some discrepancies between the photo and defendant. Henderson indicated that the gunman was cleaner shaven and had shorter hair than the individual in the photo. King, Bailey, and Washington stated that the gunman was clean shaven, had shorter hair than the individual in the photo, and had a defect in his left eye. The photo of defendant did not show any defect.

The police showed Marlow the photo of defendant, and Marlow identified defendant as the individual who accompanied him to the store. The photo showed defendant with a goatee and a mustache. Marlow stated that, at the time of the shooting, defendant had shorter hair than in the photo and had no goatee.

Nearly a year after the shooting, the police determined that defendant had been arrested on an unrelated matter in Missouri. Defendant was located and charged with this murder. The police conducted a lineup, and defendant was identified in the lineup by King and Washington. At trial, defendant was identified by King and Bailey.

We first address the photo array. King, Bailey, Washington, and Henderson all provided consistent accounts of what occurred. Immediately after the shooting, all four identified defendant's photo in an array of photos as that of the gunman. A photo array may be used in the initial identification of an offender, especially when the offender is not in police custody. (See *People v. Kubat* (1983), 94 Ill. 2d 437, 471.) The record and defendant's supporting affidavits do not show that the procedures used by the police were unnecessarily suggestive or unreliable. *Kubat*, 94 Ill. 2d at 471-73.

With respect to the lineup identification, defendant claims that the lineup was suggestive because defendant was 35 years old and the other individuals in the lineup were 18 to 22 years old. This age difference, by itself, does not establish that the lineup was unnecessarily suggestive. (See *People v. Richardson* (1988), 123 Ill. 2d 322, 349-50; *People v. Johnson* (1982), 104 Ill. App. 3d 572, 578-79.) The record and supporting affidavits do not disclose other reasons as to how the lineup was suggestive. In addition, we note that the security guard observed defendant while defendant was shoplifting and before defendant pulled out a handgun. King had a good opportunity to observe defendant and was able to recall what defendant said and did.

Defendant relies on several cases to show that a motion to suppress had a strong probability of success. In *People v. Brinson* (1980), 80 Ill. App. 3d 388, the court concluded that counsel was ineffective in not filing a motion to suppress because the record showed a strong probability of success. In that case, there was only one eyewitness to the crime, the eyewitness' identification statements were inconsistent, the eyewitness identified the defendant from a photo array where the defendant's photo was highlighted with a blue marker, and the eyewitness was acquainted with the defendant based on

several previous confrontations. The photo array was suggestive, and the eyewitness' identification was subject to doubt.

In *People v. Garza* (1989), 180 Ill. App. 3d 263, the court also concluded that counsel was ineffective by failing to adequately challenge identification evidence. In that case, there was one eyewitness to the crime, the eyewitness' identification statements were inconsistent, and the eyewitness twice selected other individuals from mug books. The identification by the only eyewitness was unreliable.

The instant case is distinguishable from *Brinson* and *Garza*. The identification material shown in the record and in the police reports was reasonably strong. In this case, several individuals witnessed the shooting, and these eyewitnesses provided consistent identification of defendant. Defendant has not made a substantial showing that counsel could have successfully challenged the photo-array and lineup evidence.

Defendant also contends that counsel should not have stipulated to the identification testimony of four other eyewitnesses who saw the gunman flee the store. Defendant argues that these other eyewitnesses could not have identified defendant as the gunman. Defendant, however, has not introduced any affidavits to support this allegation. Even if these other eyewitnesses could not have identified defendant, we find no prejudice based on the remainder of the identification evidence.

Defendant has submitted an affidavit from Marlow to show that the identification evidence could be challenged. According to Marlow's affidavit, Marlow and defendant had been in an apartment together on the day of the shooting. At some point, Marlow went to the Jewel store by himself and met an acquaintance he knew as T.J. According to Marlow, defendant and T.J.

are not the same person. According to police reports submitted by defendant, however, Marlow identified a photo of defendant as the gunman. Marlow now denies that he told the police the information contained in these police reports. Marlow also states that defense counsel did not interview him before trial. Defendant argues that counsel was ineffective in failing to investigate Marlow and call him as a witness at trial. We disagree.

As the Supreme Court has stated, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (*Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) In this case, counsel could reasonably conclude that any proposed testimony, viewed in the light of Marlow's acquaintance with defendant and Marlow's statements to the police, would be of questionable value. (*People v. Flores* (1989), 128 Ill. 2d 66, 108-09 (counsel declined to call several alibi witnesses where the alibi was undermined by statements made by the defendant to the police).) In fact, based on the police reports, counsel could reasonably conclude that Marlow's testimony would probably be harmful to defendant. See *Thompkins*, 161 Ill. 2d at 161-62; *People v. Ashford* (1988), 121 Ill. 2d 55, 74-75.

In addition, any favorable testimony by Marlow would have been subject to very damaging impeachment. (*People v. Kubat* (1986), 114 Ill. 2d 424, 433; *People v. Lewis* (1984), 105 Ill. 2d 226, 247-48.) In defendant's affidavit, defendant acknowledges that counsel did not want to call Marlow because of Marlow's previous statements to the police. As a matter of trial strategy, counsel could reasonably decline to interview or call Marlow as a witness.

Even assuming that counsel committed error, defen-

dant has not shown a reasonable likelihood that the result would have been different even if Marlow had testified in a manner consistent with his affidavit. As noted, any testimony by Marlow favorable to defendant would have been subject to severe impeachment. In contrast, the identification evidence was substantial.

Defendant has also submitted an affidavit from Jonathon Lyon, an investigator for the Illinois Capital Resource Center. In the affidavit, Lyon states that he observed defendant in 1993, 12 years after the shooting, and observed that defendant wears eyeglasses but does not have any eye defects. Three of the witnesses stated that the offender had a defect in his left eye. We note that Lyon's affidavit was not presented with the post-conviction petition and was therefore not considered by the trial judge who dismissed the petition. Defendant could have introduced the affidavit at that time. Defendant's attempt to introduce the affidavit for the first time on appeal is improper.

We further note that the affidavit is not helpful to defendant. Lyon's observations were made in 1993. Defendant's trial took place in 1983 and the murder occurred in 1981. Even accepting the affidavit as true, it does not show whether defendant had any eye defects 10 to 12 years earlier. The affidavit does not suggest that the identifications in 1981 and 1983 were unreliable.

### III. Prosecution and Alibi Witnesses

Defendant next argues that trial counsel was ineffective because he failed to investigate alibi and prosecution witnesses before trial. In his affidavit, defendant states that he gave the names of five alibi witnesses to counsel and that he wanted these witnesses called at trial. These witnesses included Mazell Howard, Kathy Wilson, John Marlow, Dorothy Johnson, and Albert Johnson.

To support a claim of failure to investigate and call witnesses, a defendant must introduce affidavits from those individuals who would have testified. Without affidavits, this court cannot determine whether these witnesses could have provided any information or testimony favorable to defendant. (*Ashford,* 121 Ill. 2d at 75.) Defendant has provided no affidavits from Kathy Wilson, Dorothy Johnson, or Albert Johnson. Because defendant has failed to submit affidavits from these proposed witnesses, we will not consider them further. (*Thompkins,* 161 Ill. 2d at 163.) With regard to John Marlow, defendant did file an affidavit. We have already addressed the usefulness of Marlow's affidavit.

Defendant also provided an affidavit purportedly from Mazell Howard. This "affidavit" introduced by defendant, however, is unsigned and is therefore insufficient to provide support for the post-conviction petition. Even assuming that the subject matter of this unsigned statement is accurate, it does not provide an alibi for defendant. Although Howard denies some of the statements attributed to her in the police reports, Howard merely states that she was in an apartment with Marlow and defendant on the day of the shooting. Marlow and defendant left the apartment together at some point, but Howard did not know where defendant was going. Howard acknowledges that she was not with defendant at the time of the shooting.

Defendant also argues that counsel failed to investigate any of the State's witnesses who presented testimony either in court or by stipulation. In particular, defendant argues that counsel failed to investigate Bailey. With regard to Bailey, we note that defendant raised the same ineffectiveness claim on direct appeal. Accordingly, this court has already addressed the issue, and the issue is barred by the doctrine of *res judicata.* With regard to other witnesses, defendant has offered no af-

fidavits to support his allegation that counsel failed to investigate or to show what these witnesses would have contributed to the defense. *Thompkins*, 161 Ill. 2d at 163.

## IV. Physical Evidence

Defendant next argues that trial counsel was ineffective in his treatment of the physical evidence. Specifically, defendant argues that counsel should have attacked the State's handling of two bullets recovered from the crime scene. One of these bullets was the bullet that killed the victim. The other bullet was the bullet that injured the security guard.

At trial, counsel stipulated to the testimony of a firearms examiner. This testimony indicated that the bullet that killed the victim did not come from the security guard's gun. Defendant argues that this opinion could have been successfully challenged because the security guard's gun fired bullets of the type that killed the victim and because the tip of the bullet that killed the victim was deformed. Defendant argues that counsel should have either interviewed the firearms examiner, James Gainer, or ordered an independent examination of the ballistics evidence.

First, defendant has not made a substantial showing of deficient performance. Assuming that counsel did not interview the firearms examiner, counsel's failure to investigate was reasonable given the circumstances. Defendant pleaded not guilty to murder and felony murder. The State offered the ballistics test to show that the security guard did not fire the fatal shot. This was consistent with defendant's not-guilty plea to felony murder. It was also consistent with trial counsel's defense strategy of requiring the State to prove defendant's guilt as to both murder and felony murder. If counsel had shown that the security guard fired the fatal shot, this would have strongly supported a conviction on the basis

of felony murder. As a matter of trial strategy, counsel could reasonably choose not to elicit evidence that would be harmful to defendant's case.

Second, defendant has not made a substantial showing of prejudice. At this stage, neither the record nor affidavits suggest that the procedures used by Gainer in conducting the ballistics test were inadequate or otherwise unreliable. When performing the ballistics test, Gainer test-fired the security guard's gun and compared the bullets fired with the bullet recovered from the victim's body. Gainer's opinion was based on the test-firing and comparison, and he stated this opinion in his report.

Defendant has submitted an affidavit from another firearms examiner, Mark Boese, to show prejudice. Again, we note that this affidavit was not presented with the post-conviction petition although it could have been, and defendant's attempt to introduce the affidavit for the first time in this appeal is improper. We further note that the affidavit is not helpful. In his affidavit, Boese states that, based on Gainer's report, he cannot make any conclusion about Gainer's ballistics testing. Boese can give no opinion as to the reliability of Gainer's test-firing of the gun and comparison of the bullets.

Defendant also argues that counsel should have conducted a more thorough investigation for the bullet that injured the security guard. Several police officers testified that they were unaware of any such bullet. Neither the record nor the affidavits suggest that further investigation would have been productive.

In addition, according to defendant, trial counsel should have argued that the State was withholding this evidence. Counsel, however, did argue that the State was withholding evidence. Counsel made a motion to produce the bullet before trial. Although he proceeded to trial before the bullet was produced, counsel made a

motion to dismiss the murder counts and a motion for mistrial, early in the trial, based on the security guard's testimony that the bullet was given to a police officer. Counsel's efforts to obtain the bullet were reasonable.

### V. Leading Questions

Defendant next argues that trial counsel was ineffective in failing to object when the prosecutor asked leading questions of witnesses. Defendant gives one specific example where the prosecutor asked a leading question and counsel failed to object. During the State's direct examination of the security guard, the prosecutor asked, "Mr. King, on this day, you had only one gun on you, is that correct?" In this appeal, defendant argues that the failure to object was prejudicial because the security guard may have had a second firearm on the day of the shooting. Defendant argues that this question, along with other errors, eliminated the possibility that the fatal bullet was fired by the security guard.

We note that trial counsel's failure to object to leading questions was not raised in the post-conviction petition, so it is waived. (*People v. Baker* (1982), 92 Ill. 2d 85, 95; Ill. Rev. Stat. 1987, ch. 38, par. 122—3.) We further note that defendant has not made a substantial showing of prejudice. Even if counsel had objected and this objection was sustained, the prosecutor could have rephrased the question to make it a nonleading question. In addition, this question was not critical to the trial and did not add anything substantial to the record. Defendant gives no examples of other leading questions where counsel failed to object. Accordingly, we find no prejudice.

### VI. Sentencing Stage

Defendant next argues that trial counsel was ineffective at the sentencing stage. Defendant first argues that counsel should have asked the State to disclose

what it intended to introduce in aggravation. Defendant is not constitutionally entitled to discovery of the State's aggravating evidence. (*People v. Foster* (1987), 119 Ill. 2d 69, 101-03.) In addition, defendant has not indicated what counsel should have done differently to challenge the aggravating evidence.

Defendant also argues that counsel should have conducted further investigation into the bullets that injured the security guard and killed the victim. We have already discussed trial counsel's performance during the guilt-innocence phase with respect to these bullets. Defendant has not introduced affidavits to suggest that further investigation of these bullets would have been productive.

Defendant's primary argument is that counsel failed to investigate possible mitigation witnesses who would have testified favorably for defendant. In support of this argument, defendant has attached affidavits from numerous character witnesses. Defendant argues that, if counsel had presented testimony from these witnesses, defendant would not have been sentenced to death.

At the sentencing hearing, counsel first challenged defendant's eligibility for the death penalty. The State argued that defendant was eligible for the death penalty pursuant to the multiple-murder aggravating factor. The State introduced defendant's earlier second degree murder conviction in California for support. Counsel argued that defendant was not eligible for the death penalty based on the California murder conviction. Counsel argued that the California murder scheme was not "substantially similar" to the Illinois first degree murder scheme, as required by statute. (See Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(3).) The trial judge rejected the argument and determined that defendant was eligible under the multiple-murder aggravating factor. Counsel's eligibility argument was reasonable and

discussed extensively on direct appeal. *Guest*, 115 Ill. 2d at 91-103.

The State then presented evidence in aggravation. The State introduced numerous armed robbery, burglary, and theft convictions to show defendant's extensive criminal history. Defendant committed most of his criminal acts in Missouri and Tennessee from 1964 to 1981. Initially, defendant committed crimes of a less serious and nonviolent nature. Defendant gradually started to commit more serious crimes, especially armed robberies. Defendant was apprehended by the police several times during this period but was able to avoid long-term imprisonment through the use of numerous aliases, bond forfeiture, and an ability to escape from custody.

We now discuss some of defendant's more serious offenses. In August of 1973, defendant was convicted of first degree robbery with a deadly weapon and first degree attempted robbery and was sentenced concurrently to eight years' imprisonment. In August of 1978, defendant was convicted of first degree robbery of a bank and received a life sentence. In November of 1978, defendant tried to escape from jail but was unsuccessful. In January of 1979, while in custody, defendant was convicted of an earlier robbery and received 35 years. At that time, defendant escaped from the courthouse where he was convicted.

In May and August of 1979, defendant was twice arrested in connection with armed robberies but avoided long-term custody by forfeiting his bond. On August 26, 1979, defendant was again arrested in St. Louis. On September 9, 1979, defendant complained of chest pains while in custody, was taken to a hospital, and escaped. On December 27, 1979, defendant was arrested in Missouri and transferred to Tennessee for trial. In 1980, in Tennessee, defendant was twice convicted of robbery

with a deadly weapon and was sentenced consecutively to a 20-year term and a 30- to 35- year term. In December of 1980, defendant complained of pains in his shoulder while in custody, was taken to a hospital, and again escaped.

On February 5, 1981, defendant shot and killed the victim in the instant case in Chicago. On March 24, 1981, defendant shot another individual three times in California, killing him. Defendant was arrested in Missouri on April 8, 1981, and was tried in this case in 1983.

Counsel then presented evidence in mitigation. Counsel first called defendant's sister as a mitigation witness. Defendant's sister testified about defendant's murder of an individual in California. She stated that the victim was carrying a handgun at the time of the shooting. Counsel again attempted to show that the second degree murder in California was not "substantially similar" to first degree murder in Illinois. Defendant's mother testified next. She stated that defendant had been a good provider for the family and had helped family members. She also stated that defendant had told his younger brothers and sisters to lead a life free of crime. Defendant did not cooperate in the preparation of a presentence investigation report which could have elicited further mitigating evidence. In closing argument, counsel made a plea for mercy, argued that the shooting was spontaneous and not planned, and again argued that defendant was not eligible for the death penalty based on the California second degree murder conviction.

After the aggravating and mitigating evidence was presented, the trial judge found no mitigating circumstances sufficient to preclude imposition of the death penalty. The court was influenced primarily by defendant's extensive criminal history and disregard for human life. The court stated:

"All of us are players, in a manner of speaking, in the game of life ***.

In the game of life, Mr. Guest, if you had played by the rules and by law, instead of in your teens dedicating your life to that of a professional criminal, you would not be here today.

Your actions in this case *** cries out that you believe human life is cheap, in fact, worth only in this case, a mere tube of toothpaste and a toothbrush."

In this post-conviction proceeding, defendant has offered the character affidavits of numerous proposed mitigation witnesses and argues that these witnesses should have been presented at sentencing. Many of the proposed mitigation witnesses are friends and family of defendant. According to the affidavits, these witnesses would testify that defendant ran errands for them, helped people in times of illness, helped people financially, and coached a little league baseball team. Defendant also told children to stay in school, not to use drugs, and not to lead a life of crime as he had. One proposed witness is a drug counselor who would testify that defendant has tried to deter children from using drugs and has referred drug addicts to a drug rehabilitation center.

The State argues that trial counsel did investigate potential mitigation witnesses and offers an affidavit from trial counsel in support. Counsel states that he did search for mitigating witnesses but many of the individuals he interviewed would not have testified favorably. We need not determine whether counsel failed to adequately investigate mitigation evidence. We find that, even if counsel did fail to investigate, defendant has not made a substantial showing of prejudice.

In this case, the aggravating evidence presented at sentencing convincingly established defendant's violent criminal history and ability to escape law enforcement officials. In contrast, given the nature of the proposed mitigation testimony, it is not reasonably likely the testimony would have changed the outcome of the

sentencing hearing. Much of the proposed mitigation is either patently untrue or not helpful. For example, one proposed witness claims that defendant watched her daughter and ran errands for her in 1983 and 1984. At that time, however, defendant was in custody for this murder conviction and death sentence. Several other proposed witnesses claim that defendant was useful because they would use defendant's criminal life as an example of how not to live when explaining to children why the children should stay in school, avoid crime, and avoid using drugs. This is not inherently mitigating testimony. Several witnesses also state that defendant provided financial help to them but the record does not show that defendant was ever employed.

Based on his numerous felony convictions, defendant was in jail for much of the time between 1971 and 1983. Defendant escaped from custody several times during this period. As he avoided the police and jail and committed more crimes, defendant allegedly performed numerous good deeds for relatives and friends. Defendant argues that the affidavits bolster defendant's character, but the aggravating evidence presented at sentencing establishes defendant's character much more persuasively. See *Strickland*, 466 U.S. at 699-700, 80 L. Ed. 2d at 701, 104 S. Ct. at 2071 (aggravating evidence outweighed potential psychiatric evidence and potential character evidence showing that numerous individuals thought the defendant was generally a good person); *Jackson v. Roth* (7th Cir. 1994), 24 F.3d 1002 (the predictable testimony of relatives and friends receives little weight at sentencing and would not offset the aggravating evidence which showed that the defendant was a repeat offender).

Defendant relies on *Caballero*, 126 Ill. 2d 248, in support of his argument. In *Caballero*, the defendant was convicted of the murder of three individuals and

sentenced to death. During the post-conviction proceeding, the defendant offered character evidence not introduced at sentencing, and this court determined that the potential mitigating evidence would have bolstered the amount of mitigation substantially. Defendant was relatively young, lacked a significant prior criminal history, and had been a model student until about two years before the killings. The record suggested that the defendant was caught up in the tragic circumstances that led to the killings and acted under the guidance of others. The proposed mitigating evidence would have supported these arguments, and the defendant was entitled to an evidentiary hearing. *Caballero*, 126 Ill. 2d at 280.

The facts in this case are clearly distinguishable. In this case, defendant has a significant prior criminal history, defendant was not caught up in tragic circumstances, and defendant was not coerced by others. The nature of the aggravating and mitigating evidence in this case is different from that in *Caballero*. See also *People v. Mahaffey* (1995), 165 Ill. 2d 445, 466-67 (character evidence, consisting of the testimony of the defendant's family and friends, was cumulative and would not have outweighed the defendant's extensive criminal history); *People v. Owens* (1989), 129 Ill. 2d 303, 314 (aggravating evidence was overwhelming because it showed the defendant's history of violence and his brutal murder of three victims); *cf. People v. Ruiz* (1989), 132 Ill. 2d 1, 24-26 (evidentiary hearing required because proposed mitigation testimony would suggest that the defendant was not an active or willing participant in the offenses but acted because of gang pressure); *Thompkins*, 161 Ill. 2d at 165-68 (evidentiary hearing required because character testimony would suggest that the defendant's role in the offenses was subject to doubt).

VII. Performance of Post-Conviction Counsel

In his final argument, defendant challenges the performance of his post-conviction counsel. Defendant contends that he received inadequate representation in the post-conviction proceedings because post-conviction counsel did not file a Rule 651(c) certificate, failed to interview and attach affidavits from alibi witnesses, failed to support allegations in the post-conviction petition with affidavits, and failed to raise critical arguments.

Initially, we note that defendant is not constitutionally entitled to the effective assistance of counsel at a post-conviction proceeding. (*Pennsylvania v. Finley* (1987), 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990; *People v. Johnson* (1993), 154 Ill. 2d 227, 237.) Instead, counsel's performance in a post-conviction proceeding is dictated by statute. This court has held that, in a post-conviction proceeding, the statute entitles a defendant to a reasonable level of assistance. *People v. Flores* (1992), 153 Ill. 2d 264, 276.

In this case, post-conviction counsel did not file a Rule 651(c) certificate. Under Rule 651(c), the record must show that post-conviction counsel "consulted with petitioner *** to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." 134 Ill. 2d R. 651(c).

This court, however, has held that the absence of a Rule 651(c) certificate is harmless if the record shows that counsel met the requirements of the rule. (*People v. Szabo* (1991), 144 Ill. 2d 525, 532; *Johnson*, 154 Ill. 2d at 238.) The record shows that there was communication between post-conviction counsel and defendant. The record also shows that counsel obtained investigative assistance from the court. In addition, post-conviction

counsel alleged a number of constitutional errors in the supplementary post-conviction petition that defendant did not raise in the *pro se* petition. Accordingly, post-conviction counsel satisfied the requirements of the rule.

Defendant also argues that post-conviction counsel failed to introduce affidavits needed to support certain allegations raised in the post-conviction petition. With regard to counsel's duty to submit affidavits, this court has stated:

> "In the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." (*Johnson*, 154 Ill. 2d at 241.)

In *Johnson*, post-conviction counsel was inadequate because counsel presented no affidavits and acknowledged that he had made no investigation. In this case, in contrast, post-conviction counsel submitted numerous affidavits in support of the petition. In support of his argument, defendant has supplemented the record on appeal with affidavits that post-conviction counsel did not present to the trial judge. These affidavits are of little help to defendant, and post-conviction counsel cannot be considered ineffective in failing to present them. Defendant has not overcome the presumption that counsel made a concerted effort to obtain affidavits.

Defendant also argues that post-conviction counsel failed to raise certain critical arguments in the post-conviction petition. These critical arguments were either raised in the petition or have been addressed in this appeal. We find that defendant received a reasonable level of assistance from post-conviction counsel.

Finally, in one sentence, defendant states that he incorporates all issues previously raised in the direct appeal, the *pro se* post-conviction petition, and the sup-

plementary post-conviction petition. As for the issues already raised on direct appeal, we will not reconsider them on the basis of *res judicata*. As for other issues presented in the post-conviction petitions, defendant has not properly appealed them. Supreme Court Rule 341(e)(7) requires that a party provide argument and citation to any relevant authority when raising an issue. (134 Ill. 2d R. 341(e)(7); *People v. Felella* (1989), 131 Ill. 2d 525, 540.) By failing to do so, defendant has waived these issues.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed. The clerk of this court is directed to enter an order setting Wednesday, November 15, 1995, as the date on which the sentence of death, entered by the circuit court of Cook County, shall be carried out. Defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1991, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*