**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200204-U

Order filed April 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0204 Circuit No. 16-CF-269 |
| JEREMY D. SLEDGE, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Daugherity and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*: The circuit court's summary dismissal of defendant's *pro se* postconviction petition at the first stage is affirmed, where defendant's petition failed to state an arguable basis in law.

¶ 2   Following the affirmance of defendant's convictions on direct appeal, defendant filed a *pro se* postconviction petition. The circuit court summarily dismissed defendant's petition at the first stage as frivolous and patently without merit. Defendant appeals, arguing his petition alleged the gist of a constitutional claim.

¶ 3                                    I. BACKGROUND

¶ 4        In August 2016, defendant was tried by a jury and convicted of armed robbery (720 ILCS

5/18-2(a)(2) (West 2016)) and unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-

1.1(a)). Defendant was sentenced to a 25-year term of imprisonment. This court affirmed

defendant's convictions on direct appeal in *People v. Sledge*, 2019 IL App (3d) 170052-U.

¶ 5                                  A. Trial Testimony

¶ 6        At trial, George Moss testified that he was in a relationship with Arricka Triplett and was

at Triplett's apartment on the morning of the incident. That morning, Moss heard a knock on the

front door and looked outside. Moss recognized the man knocking on the door, so he opened the

door, but a different man ran into the apartment. This man wore a black hooded sweatshirt with

something like "rest in peace" written on the front of it. The man was not wearing a hood or a

mask, allowing Moss to clearly view his face. The man asked for money while holding a black

gun, and then hit Moss over the head with the gun several times. Moss told the assailant that he

did not have any money. At that point, Triplett entered the room, the man pointed the gun at

Triplett, and again demanded money. Triplett also replied that she did not have any money.

¶ 7        Moss testified that the man grabbed $10 to $15 that was laying on a table and exited the

apartment. Approximately 15 minutes later, Triplett called the police, who arrived at the scene

and drove Moss and Triplett to a nearby apartment complex on Lavelle Court. Thereafter, the

police brought two men out of an apartment. Moss identified the second man, defendant, as the

assailant. Moss also identified defendant in court as the robber.

¶ 8        Triplett testified that she heard a knock on the door that morning but initially stayed in

bed. Triplett heard Moss saying, "I don't have any money. I don't have any money." Triplett got

out of bed and walked into the kitchen, where she saw the assailant hitting Moss on the head

2

with a black gun. The man pointed the gun at Triplett, and Triplett told the man she did not have any money. The man was wearing a black hoodie that said something like "rest in piece [*sic*] on it." Triplett had a clear view of the man's face. The man was not wearing a mask, but his hood was up. After the man ran from the apartment, Triplett looked out the window and watched the man get into the back seat of a white car with a black hood. Triplett did not see the driver. The car drove away, and Triplett called the police to report the crime. Triplett informed the police that she saw the assailant enter a white car with a black hood.

¶ 9        The police subsequently drove Triplett and Moss to an apartment complex on Lavelle Court, where Triplett identified the white car with a black hood. Triplett was in the back seat of a squad car in the parking lot of the apartment complex when the police brought out two men, separately, from an apartment. First, the police brought out Jamarco Moore, whom Triplett recognized as a family member. Triplett knew that Moore had driven the white car with a black hood in the past. The police then brought defendant out of the apartment. Triplett identified defendant as the robber because she remembered his face. Triplett further averred that she had known defendant since childhood. However, Triplett did not immediately recognize defendant at the scene of the crime because defendant had cut his dreadlocks. Triplett also identified defendant in court as the robber.

¶ 10        City of Peoria police officer, Marilyn Robinson, testified that she was dispatched to Triplett's apartment at approximately 9:52 a.m. on April 9, 2016. Upon arrival, Robinson noted injuries to Moss's head. Moss and Triplett described the assailant as a black male wearing a black hooded sweatshirt with writing on it. They also described the car involved in the incident as a white car with a black hood. Robinson related this description of the car over her police radio and was subsequently informed that a vehicle fitting that description was located at an

3

apartment complex on Lavelle Court. Triplett and Moss were transported to the apartment complex, where Triplett identified the car.

¶ 11     At some point, Moss and Triplett were placed into separate squad cars. While sitting in separate squad cars, two men passed by the police officers, walked up some stairs, and entered an apartment. Triplett indicated to the officers that one of the men was Moore and that she knew him. The officers then went into the apartment that Moore and the other man had entered. Next, an officer brought Moore out of the apartment. Another officer brought defendant out of the apartment. Triplett identified defendant as the assailant. Based on the testimony of the various officers involved in this case, it appears this identification took place between 10:30 a.m. and 11:00 a.m.

¶ 12     City of Peoria police officer, Jarvis Harrison, testified that he received a dispatch regarding a suspect who had entered a white vehicle with a black hood. Harrison located the vehicle outside an apartment on Lavelle Court around 10:05 a.m. and began running the license plates. Harrison notified Officer Robinson, who brought the victims to the apartment complex to identify the vehicle. While parked in a squad car in front of the apartment building, two black males walked past and entered the apartment. Triplett identified one of the males as a family member who drove the car in question. Officers then entered the apartment, after a resident consented to the search. Officers entered the apartment approximately 30 minutes after Harrison initially arrived at the scene. There were three black males and one child in the apartment. When defendant emerged from the bathroom, he was not wearing a black hoodie. Defendant "was taken into custody and handcuffed." Defendant was then released to other officers, who took defendant outside. Following a search of the apartment, Harrison located what appeared to be a handgun that was wrapped in a T-shirt in the back bedroom.

4

¶ 13 City of Peoria detective, Stevie Hughes, Jr., testified that he arrived at the Lavelle Court apartment at 10:35 a.m. Hughes entered the apartment after obtaining consent to search from Jamere Hayes, a resident. Hayes, Moore, defendant, and a child were inside the apartment. Defendant was in the bathroom when Hughes initially entered. Hughes determined that the apartment was not defendants. After looking around, Hughes located a black hoodie in the rear bedroom, the same bedroom where the suspected handguns were located.

¶ 14 City of Peoria police officer, Scott Bowers, identified several photographs he had taken at the Lavelle Court apartment, including photographs of a black hooded sweatshirt that said "R.I.P.," and two black handguns that were wrapped in a T-shirt. No DNA samples suitable for comparison were discovered on the handguns.

¶ 15 B. Postconviction Proceedings

¶ 16 On February 12, 2020, defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq*. (West 2020)), requesting that the circuit court vacate his convictions and grant him a new trial. In his petition, defendant argued he was arrested, absent probable cause, prior to the show up identification, wherein defendant was identified as the robber.

¶ 17 In support of his claims, defendant cited portions of the trial transcript, which were attached to his petition. Defendant also attached this court's order in *Sledge*, 2019 IL App (3d) 170052-U and a memorandum of law to his petition. In the petition, defendant accurately detailed the trial testimony of Officers Hughes and Harrison. Defendant alleged that several officers entered the apartment after obtaining consent to search. During this time, defendant emerged from the bathroom and was not wearing a black hooded sweatshirt. However, defendant alleged that at this time he was taken into custody, informed that he was under arrest, and

5

handcuffed. Additionally, defendant alleged in his memorandum of law that when he emerged from the bathroom, Officer Harrison approached defendant with his hand on his weapon and ordered defendant to turn around and place his hands behind his back.

¶ 18        Based on these facts, defendant argued that had a motion to suppress predicated on the theory of an unlawful arrest been filed, it would have been meritorious. Defendant argued the show up identification of defendant and the discovery of two handguns should have been suppressed, casting doubt on the outcome of his trial. Accordingly, defendant asserted that trial counsel was ineffective for failing to file a motion to quash arrest and suppress this evidence prior to trial. Defendant further argued that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.

¶ 19        On April 23, 2020, the circuit court dismissed defendant's petition, finding that it was frivolous and patently without merit. On June 22, 2020, defendant filed a late notice of appeal, which was allowed by this court.

¶ 20                                      II. ANALYSIS

¶ 21        On appeal, the parties dispute whether the court should have summarily dismissed defendant's petition, which alleged ineffective assistance of counsel for failure to file a motion to suppress. Our review of the circuit court's summary dismissal of defendant's petition at the first stage is *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 22        Before reaching the merits of defendant's appeal, we note that the parties both address the fact that defendant failed to raise the instant ineffective assistance of trial counsel claim on direct appeal. Indeed, defendants generally waive review of issues not raised on direct appeal. See *People v. Guest*, 166 Ill. 2d 381, 390 (1995); *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). However, the caselaw instructs that the waiver rule may be relaxed, where the alleged

6

waiver stems from the incompetence of appellate counsel or where the facts related to the claim did not appear in the original appellate record. *Guest*, 166 Ill. 2d at 390. To be sure, defendant's petition is based on the evidence adduced at trial, not newly discovered evidence. However, defendant argues that to the extent the record in his direct appeal contained sufficient facts upon which the instant ineffective assistance claim could have been raised, appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness at that time. We agree and find that defendant's petition adequately alleges the ineffective assistance of appellate counsel on direct appeal, such that waiver of the instant claim is excused.

¶ 23    Turning to the postconviction proceeding, the Act offers criminal defendants a mechanism to mount a collateral attack on a final judgment by asserting that in the proceedings which resulted in his or her conviction, there was a substantial denial of his or her rights under the Constitution of the United States or the State of Illinois or both. *People v. Clinton*, 2016 IL App (3d) 130737, ¶ 21; *People v. Robinson*, 2020 IL 123849, ¶ 42. The Act sets forth a three-stage process for reviewing postconviction claims. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002); *Clinton*, 2016 IL App (3d) 130737, ¶ 21. At the first stage, "all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). To advance past the first stage, a *pro se* defendant must allege the gist of a constitutional claim. *Hodges*, 234 Ill. 2d at 9-12. This gist standard is a low threshold to meet. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To establish the gist of a constitutional claim, a postconviction petition need only set forth a limited amount of detail and need not set forth the claim in its entirety or even include legal arguments or citation to authority. *Id*. Our supreme court has also equated the gist of a constitutional claim to a claim that is "*not* frivolous or patently without merit." (Emphasis in original.) *Hodges*, 234 Ill. 2d at 11. A postconviction

7

petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in fact or law. *Id.* at 11-12.

¶ 24　　　　Based on the aforementioned jurisprudence, the question before this court is whether the ineffective assistance claim in defendant's petition had an arguable basis in law. Here, defendant intertwines two separate ineffective assistance claims, arguing appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. Stated differently, appellate counsel's ineffectiveness depends wholly on whether trial counsel was, in fact, ineffective. See *People v. Edwards*, 195 Ill. 2d 142, 163-64 (2001) (claims of ineffective assistance of appellate counsel fail where the underlying claim is meritless).

¶ 25　　　　At the first stage of postconviction proceedings, a petition predicated on ineffective assistance of counsel may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that the defendant suffered prejudice. *People v. Tate*, 2012 IL 112214, ¶ 19. Counsel's decision on whether to file a motion is considered a matter of trial strategy and is accorded great deference. *People v. Bryant*, 128 Ill. 2d 448, 458 (1989). In such cases, criminal defendants must overcome the strong presumption that counsel's action and/or inaction constituted reasonable trial strategy. *People v. Clendenin*, 238 Ill. 2d 302, 317 (2010). Thus, to establish prejudice based on counsel's failure to file a suppression motion, defendants must demonstrate that the unargued suppression motion is arguably meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed. See *People v. Henderson*, 2013 IL 114040, ¶ 15; see *People v. Hunter*, 2013 IL App (3d) 110310, ¶ 10.

¶ 26　　　　In his petition, defendant argued that he was arrested absent probable cause, that certain evidence was obtained as a result of his unlawful arrest (two handguns and witness'

8

identifications), and that this evidence likely would have been suppressed, if challenged. For these reasons, defendant argues trial counsel was ineffective for failing to file a motion to quash arrest and suppress evidence. Additionally, defendant argues appellate counsel was ineffective on direct appeal, where counsel failed to raise the issue of trial counsel's ineffectiveness. Defendant alleges he suffered prejudice as a result of these shortcomings.

¶ 27 The State concedes, on appeal, that the officers lacked probable cause to arrest at the time defendant exited the bathroom in the Lavelle Court apartment. The State's concession is supported by the record. However, the State maintains that police detention is not always synonymous with an arrest. The State asserts that defendant was briefly detained, not arrested, as part of a legitimate show up identification procedure. In other words, the State argues the officers were justified in handcuffing defendant, without probable cause, as part of a brief investigative detention, otherwise known as a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968).

¶ 28 Our supreme court provides that police citizen encounters can be divided "into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or 'Terry stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Under *Terry*, a police officer may stop and detain a person without probable cause to investigate possible criminal activity if the officer can point to specific, articulable facts, which, taken together with rational inferences, reasonably warrant the intrusion. *Terry*, 392 U.S. at 21; See *People v. Lippert*, 89 Ill. 2d 171, 181-82 (1982) (instructing that detaining an individual for a short time for purposes of a show up is a legitimate investigatory procedure even if one considers the grounds to have been less than probable cause to arrest); see *People v. Bennett*, 376 Ill. App. 3d 554, 565

(2007) (instructing that under *Terry*, officers are permitted to briefly detain an individual to investigate the possibility of criminal behavior absent probable cause to arrest and that investigatory detentions are distinguished from arrests based on the length of the detention and the scope of the investigation following the detention, not the initial restrain of movement).

¶ 29        Here, defendant's suppression argument is stymied by the fact that the officers arguably had a reasonable suspicion to briefly detain him for investigatory purposes to determine defendant's involvement in the robbery. However, defendant's argument on appeal may be dispatched on simpler grounds. Namely, that defendant cannot establish ineffective assistance of counsel, where no arguable, reasonable probability exists that the trial outcome would have been different had the contested evidence been suppressed.

¶ 30        Regarding the handguns defendant seeks to suppress, this court previously held in *Sledge*, 2019 IL App (3d) 170052-U, ¶ 44 that "a new trial without admission of the guns would not produce a different result." This court reasoned that even if the handguns were erroneously admitted into evidence, the error was harmless where the victims' testimony that defendant entered Triplett's apartment, held a black gun, repeatedly struck Moss with the gun, and took money from a table, coupled with the parties' stipulation regarding defendant's prior felony conviction, was sufficient to prove defendant guilty beyond a reasonable doubt. *Id.* As such, not only is defendant's argument concerning the handguns arguably barred, but no reasonable probability exists that the trial outcome would have been different without the admission of the guns. The same holds true for the identification evidence.

¶ 31        In his petition, defendant argues "there is more than a possibility that the show-up identification procedure the police conducted for the complaintants [*sic*] by using [defendant] as a participant would have been suppressed." But even assuming the court barred the presentation

of evidence that defendant was identified by the victims as the assailant outside of the apartment, both victims independently identified defendant as the assailant in open court. Defendant does not suggest the victims' in-court identifications of defendant were tainted by their previous identifications of defendant outside the Lavelle Court apartment, and nothing in this record causes this court to view the victims' in-court identifications as anything other than reliable, especially where the victims viewed defendant's face from close range. Thus, a new trial, without evidence of the initial show up identification, would not produce a different result.

¶ 32 Further, we note that defendant's proposed motion to quash arrest and suppress evidence would challenge whether the arresting officer had probable cause or reasonable suspicion to detain defendant. As previously recognized in this court and others, a motion to quash arrest that is premised on a lack of probable cause does not appear to be a legitimate motion. *People v. Winchester*, 2016 Ill. App (4th) 140781, ¶¶ 22-32; *People v. Motzko*, 2019 IL App (3d) 180184, ¶ 19; *People v. Atchison*, 2019 IL App (3d) 180183, ¶¶ 22-27. Even if this court were to find defendant's "arrest" invalid, the remedy available to defendant is not dismissal of the charges but rather suppression of the evidence obtained as a result of the arrest, which we have already determined would have no impact on the outcome of defendant's trial. *People v. Williams*, 2019 IL App (3d) 160132, ¶ 13; *Atchison*, 2019 IL App (3d) 180183, ¶ 13 (providing that a trial court is only authorized to dismiss criminal charges prior to trial for the reasons set forth under section 114-1 of the Code of Criminal Procedure of 1963).

¶ 33 In sum, a motion to suppress evidence, had it been filed, and had it succeeded, would not have changed the outcome of defendant's trial. Accordingly, trial counsel was not ineffective for not filing this motion. Likewise, appellate counsel on direct appeal was not ineffective for failing to raise issues that lacked merit. See *Edwards*, 195 Ill. 2d at 163-64; see *People v. Peeples*, 205

Ill. 2d 480, 513 (2002); see *People v. Easley*, 192 Ill. 2d 307, 328-329 (2000). For the above stated reasons, defendant's petition failed to state an arguable basis in law, where defendant's ineffective assistance arguments were without merit. Thus, we affirm the circuit court's dismissal of defendant's petition at the first stage.

¶ 34                                    III. CONCLUSION

¶ 35          The judgment of the circuit court of Peoria County is affirmed.

¶ 36          Affirmed.