(No. 85359

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDWARD ALPHONS MOORE, JR., Appellant.

*Opinion filed February 17, 2000.—Rehearing denied April 3, 2000.*

522

524

Charles Schiedel, Deputy Defender, of Springfield, and Steven Clark, Assistant Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

James E. Ryan, Attorney General, of Springfield, and Lance Peterson, State's Attorney, of Morris (Joel D. Bertocchi, Solicitor General, and William L. Browers and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Edward Alphons Moore, Jr., was convicted of seven counts of first degree murder, and one count each of home invasion, residential burglary, aggravated criminal sexual assault, robbery, and arson, after a jury trial in the circuit court of Grundy County. The same jury determined that defendant was eligible for the death penalty (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b)(6)(c) (murder committed in the course of a felony)), and that there were no mitigating factors sufficient to preclude the imposition of the death penalty. Accordingly, the circuit court sentenced defendant to death. On direct appeal, this court affirmed defendant's convictions and sentence. *People v. Moore*, 171 Ill. 2d 74 (1996).

Defendant subsequently filed a *pro se* petition for post-conviction relief. The circuit court appointed counsel for defendant, and counsel filed an amended petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1994)). The State moved to dismiss the amended petition. The circuit court dismissed the amended petition without an evidentiary hearing. Defendant now appeals from the circuit court's dismissal of his amended post-conviction petition without an evidentiary hearing. This appeal was taken directly to this court because defendant was sentenced to· death for the underlying murder conviction. See 134 Ill. 2d R. 651(a). We affirm the dismissal of defendant's amended post-conviction petition.

## BACKGROUND

### Trial Evidence

The facts relating to defendant's trial are set forth in detail in this court's opinion on direct appeal. See *People v. Moore*, 171 Ill. 2d 74 (1996). Consequently, we provide only a brief summary here. We discuss additional relevant facts in the context of the issues raised on appeal.

On July 7, 1991, between 2:30 and 3:30 a.m., defendant sexually assaulted and murdered Judy Zeman at her home in Grundy County. Judy had hired defendant to paint the Zeman home. At approximately 5:30 a.m. on July 7, 1991, a sheriff's deputy found Judy's car abandoned on a neighbor's property. The car was against a tree and the keys were in the ignition. Upon arriving at Judy's home, the deputy found Judy lying naked in the driveway near a woodpile that was still burning. Judy was moaning for help. She had duct tape stuck in her hair and her hands were tied behind her back with duct tape. Judy had second- and third-degree burns over 90% of her body but she was still alive and conscious. Judy was able to relate to the deputy that she had been sexually assaulted and lit on fire. She indicated that she had been home alone because her husband was on a fishing trip. While she walked to her bathroom, a man jumped out with a knife. She could not describe her attacker because it was dark; however, she indicated that he wore dark clothing and gloves. He raped her, stole money and jewelry from the safe, and then told her that he had to "burn some evidence." At that point he took her to a nearby woodpile, poured gasoline over her and lit her on fire. She was later able to crawl from the wood pile to the driveway. Judy died that evening from thermal burns.

The evidence at trial also showed that later on July 7, 1991, defendant paid cash for a one-way plane ticket to Florida. He originally gave the ticketing agent a false name, but gave his real name after she insisted on some identification. While in Florida, defendant tried to sell rings belonging to Judy. These rings had been kept in the safe in Judy's home. Defendant was ultimately apprehended in New York City and placed in a holding cell where he made inculpatory statements to a fellow inmate.

Physical evidence was also introduced at trial.

Defendant's business card was found in a neighbor's driveway near where Judy's car was abandoned. Two fingerprints found on the duct tape taken from Judy's hair and one fingerprint on the key tag found in Judy's abandoned car were identified as belonging to defendant. Human hairs, which were found in defendant's car, were consistent with Judy's hair and one strand of hair showed heat damage. Seminal material from Judy was consistent with defendant's blood type. Moreover, a DNA expert testified that defendant's blood and seminal fluid taken from Judy's vaginal swab "matched."

A jury found defendant guilty of first degree murder, home invasion, residential burglary, aggravated criminal sexual assault, robbery and arson. The same jury found defendant eligible for the death penalty because he committed murder in the course of another felony. At the second phase of the sentencing hearing, the State presented evidence in aggravation regarding defendant's extensive criminal history, which included imprisonment for committing forgery, theft, residential burglary, deceptive practices, and violations of probation and parole. The State also introduced evidence of two separate allegations of sexual assault committed by defendant on two 15-year-old girls. In mitigation, defendant introduced evidence that he has a mental and learning disability, and that he had been physically abused by his father as a child. The jury found that there were no mitigating circumstances sufficient to preclude the imposition of the death penalty.

Thus, the circuit court sentenced defendant to death for the murder of Judy Zeman.

### Post-Conviction Proceedings

Defendant filed a *pro se* petition for post-conviction relief, which appointed counsel thereafter amended. In response, the State filed a motion to dismiss defendant's amended post-conviction petition. Defendant also filed

various *pro se* motions concerning returning seized personal property of defendant, appointing an additional post-conviction investigator whose findings would be supplemented to the amended post-conviction petition, and supplementing the amended post-conviction petition. After briefing and argument, the circuit court granted the State's motion to dismiss all claims in the amended post-conviction petition without conducting an evidentiary hearing, and denied the *pro se* motions.

Defendant now appeals from the dismissal of his amended post-conviction petition. For the reasons set forth below, we hold that the circuit court properly dismissed defendant's amended post-conviction petition without an evidentiary hearing. We therefore affirm the judgment of the circuit court.

## ANALYSIS

Initially, we note that defendant filed a *pro se* motion to allow a reply brief to be filed by his appellate attorney because defendant failed to obtain new counsel to represent him in this appeal. No objection was filed by the State. This motion was taken with the case and we allow it. The motion also requests that we review all of defendant's *pro se* motions filed in the post-conviction proceedings. As is customary, we consider the entire record on appeal in rendering a decision with the appropriate relief.

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq*. (West 1994)) provides a remedy to criminal defendants who claim that a substantial violation of their federal or state constitutional rights occurred in their trial or sentencing hearing. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). The scope of a post-conviction proceeding, which is a collateral proceeding on a prior judgment, is limited to inquiry into constitutional issues involved in the conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal. *Towns*, 182 Ill. 2d at 502.

An evidentiary hearing on a post-conviction petition is required where the allegations of the petition, supported where appropriate by the trial record or accompanying affidavits, make a substantial showing that the defendant's constitutional rights have been violated. *People v. Hobley*, 182 Ill. 2d 404, 428 (1998); *Towns*, 182 Ill. 2d at 503. In making a determination whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are taken as true. *Towns*, 182 Ill. 2d at 503. Assertions that are nonfactual and nonspecific and that merely amount to conclusions are not sufficient to require an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). A trial court's determination as to the sufficiency of the allegations contained in a post-conviction petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d at 389.

In light of these principles, we review *de novo* the circuit· court's dismissal of defendant's amended post-conviction petition without an evidentiary hearing.

## I. Fitness to Stand Trial

Defendant argues that he is entitled to a new trial or an evidentiary hearing on his fitness for trial because he has made a substantial showing that his due process right not to be tried or sentenced while unfit was violated. Defendant claims that he was entitled to a fitness hearing because there was a *bona fide* doubt as to his fitness to stand trial, given his ingestion of psychotropic medication near the time of trial, and his history of mental treatment, substance abuse, a brain injury, a learning disability, and a low IQ.

The following documents and affidavits were presented to the circuit court during post-conviction proceedings. The Grundy County sheriff's police prisoner medical treatment records, which were attached to defendant's amended post-conviction petition, show that defendant was prescribed Limbitrol from February 3,

1992, through March 8, 1992. Those records also show that defendant was prescribed amitrip, also known as amitriptyline, from March 6, 1992, through April 16, 1992. Limbitrol and amitrip are considered psychotropic medications. See 405 ILCS 5/1—121.1 (West 1992); Physicians' Desk Reference 1370, 3418 (53d ed. 1999). Jury selection began on May 19, 1992, and the actual trial began on May 27, 1992. Also attached to the amended post-conviction petition are affidavits from defendant and trial counsel. In his affidavit, defendant stated that he took the drug Thorazine, which he received from another jail inmate and not under medical direction, during his incarceration in a New York City jail in 1991, while awaiting extradition to Illinois to face the murder charge at issue. Defendant's trial counsel stated in his affidavit that he was not aware that defendant had been administered any type of medication while in custody near the time of trial. Consequently, no fitness hearing was requested or ordered.

Defendant filed supplemental affidavits as well. An affidavit from a clinical psychologist, who reviewed defendant's medical history and treatment, concluded that a retrospective fitness evaluation to determine the effects of psychotropic drugs is not possible. An affidavit from a clinical neuropsychologist, who evaluated defendant, stated that defendant has attention deficit disorder, traumatic brain injury, and a possible substance abuse problem.

The State moved to dismiss defendant's amended post-conviction petition without an evidentiary hearing. In support of its motion, the State attached the manufacturers' brochures for the medications prescribed to defendant, the records of the pharmacy that provided the medications, and the affidavit of the pharmacist. The State later filed supplemental affidavits from the psychiatrist who prescribed the medications, the psychiatrist

who reviewed defendant's medication records, and the doctor who served as defendant's physician while defendant was incarcerated in Grundy County jail. These records and affidavits state that the dosage of medication given to defendant was relatively small and that the aforementioned medications were prescribed merely as a sleep aid and to reduce anxiety, not as an antipsychotic medication. Any effect of the medications would have been metabolized and out of defendant's system on or about May 7, 1992. Moreover, if any residual amounts of either drug remained in defendant's body at the time of trial, those would have been trace amounts that would not have affected defendant's mood, thought process, thought content, demeanor or cognitive abilities during the course of trial. The State's affidavits also state that, during defendant's incarceration at the Grundy County jail, defendant was examined several times and found to be healthy with no conditions that would inhibit his ability to metabolize drugs or medications.

The State submitted an additional affidavit from defendant's trial counsel, who stated that defendant, prior to and during the trial and sentencing hearings, was able to communicate with him in a clear manner and was able to and did actively assist him in the preparation of his defense. Trial counsel stated that he believed that defendant was able to understand the nature and purpose of the proceedings against him and to assist in his defense.

After considering the above records and affidavits presented by defendant and the State, the circuit court determined that defendant did not take psychotropic medication at or near the time of trial and, thus, was not entitled to a fitness hearing. The circuit court therefore concluded that an evidentiary hearing was not warranted on this claim.

Before considering the merits of defendant's fitness

claim, we address a procedural matter. Motions to dismiss are generally limited to consideration of the petitioner's allegations and the original trial record. See *Coleman*, 183 Ill. 2d at 381-82. As such, the counter-affidavits presented by the State in its motion to dismiss should not have been considered by the circuit court in determining whether to dismiss the amended petition without an evidentiary hearing. We therefore do not consider those affidavits in rendering our decision.

We now consider defendant's claim that he has made a substantial showing that he was denied due process because he was ingesting psychotropic drugs near the time of trial but did not receive the requisite fitness hearing. In support, defendant relies on section 104—21(a) of the Code of Criminal Procedure of 1963, which at the time of defendant's trial provided that "[a] defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." See 725 ILCS 5/104—21(a) (West 1992).

In *People v. Mitchell*, 189 Ill. 2d 312 (2000), this court held that such a claim is not cognizable on post-conviction review. In so holding, we explained that a defendant's right to a fitness hearing pursuant to section 104—21(a) is a statutory right, and not a constitutional right, such that the failure to receive this fitness hearing is not a constitutional deprivation. *Mitchell*, 189 Ill. 2d at 336-37. We further explained that, to obtain post-conviction relief, a defendant must establish a substantial deprivation of a federal or state constitutional right in the proceedings that produced the judgment being challenged. *Mitchell*, 189 Ill. 2d at 321-22, citing 725 ILCS 5/122—1 (West 1994). Consequently, we concluded that an allegation in a post-conviction petition concerning a deprivation of a statutory right to a fitness hearing is not a proper claim on post-conviction review because it does

not give rise to a constitutional deprivation. *Mitchell*, 189 Ill. 2d at 328-29. In light of our decision in *Mitchell*, we hold that defendant's claim that he was denied due process when he did not receive a fitness hearing under section 104—21(a) is not a proper basis for post-conviction relief because it is a statutory and not a constitutional claim.

We further note, however, that our decision in *Mitchell* contained a second component involving a claim of ineffective assistance of trial counsel for failing to request a section 104—21(a) fitness hearing. In *Mitchell*, we held that, where a defendant alleges in a post-conviction petition that he was deprived of his right to the effective assistance of counsel because trial counsel failed to request a fitness hearing under section 104—21(a), such a claim was properly considered on post-conviction review. We reasoned that the framing of such a claim has a constitutional foundation and is therefore a proper claim under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1994)). *Mitchell*, 189 Ill. 2d at 337-38. Defendant argues that his trial counsel was ineffective for failing to request a fitness hearing under section 104—21(a). Although defendant does not raise this argument in his brief before this court or in his amended post-conviction petition, defendant did raise such a claim in his *pro se* post-conviction petition. We recognize that a defendant has no right to both self-representation and the assistance of counsel. *People v. McDonald*, 168 Ill. 2d 420, 435 (1995). Here, defendant is represented by counsel on appeal and was represented by counsel for the amended post-conviction petition. Consequently, defendant has no right to present his *pro se* argument. Nevertheless, in light of the fact that defense counsel did not have the benefit of our decision in *Mitchell* when preparing the amended post-conviction petition and the brief on appeal, and that this is a capital case, we consider defendant's *pro se* ineffective assistance claim. See, *e.g.*, *Mc-*

*Donald*, 168 Ill. 2d at 435 (deciding to consider the arguments addressed in the defendant's *pro se* brief on appeal because it was a capital case); *People v. Gacy*, 125 Ill. 2d 117, 133-34 (1988) (same).

It also appears that, in addition to defendant's reliance on section 104—21(a) as a basis for his due process claim, defendant further contends that he was deprived of due process because there was a *bona fide* doubt as to his fitness as shown in his history of mental treatments, a brain injury, a learning disability, and a low IQ.

To prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984). In *Mitchell*, 189 Ill. 2d at 337-38, this court held that to establish prejudice, *i.e.*, the second prong of the *Strickland* test, the defendant must show a reasonable probability that, had counsel requested a fitness hearing, the defendant would have been found unfit to stand trial.

Defendant has not shown a reasonable probability that he would have been found unfit to stand trial had trial counsel requested a fitness hearing. A defendant is considered unfit to stand trial if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. *People v. Haynes*, 174 Ill. 2d 204, 226 (1996); 725 ILCS 5/104—10 (West 1992). The records and affidavits that defendant attached to his amended post-conviction petition do not suggest a *bona fide* doubt of defendant's fitness to stand trial. Defendant stopped ingesting the prescribed medications 33 days prior to

trial. Moreover, the affidavit from the clinical psychologist merely states that a retrospective fitness evaluation based on the effects of psychotropic drugs is not possible. This affidavit does not indicate defendant's lack of fitness for trial. The affidavit from the clinical neuropsychologist refers to defendant as having attention deficit disorder, traumatic brain injury, and a possible substance abuse problem. This affidavit likewise does not suggest that defendant was unfit to stand trial. The mere fact that a defendant has limited mental capacity does not by itself raise a *bona fide* doubt of his fitness for trial. See *People v. Murphy*, 72 Ill. 2d 421, 432 (1978). This court has held that fitness refers only to a person's ability to function within the context of a trial such that a defendant may be fit to stand trial, although his mind is otherwise unsound. *Haynes*, 174 Ill. 2d at 226; *Murphy*, 72 Ill. 2d at 432-33. Defendant therefore has not made a substantial showing that he was not able to understand the nature and purpose of the proceedings or to assist in his defense.

The trial record further belies any claim that defendant did not understand the nature of the proceedings or was unable to assist in his defense. Defendant exhibited rational and competent behavior at trial. For example, defendant's testimony, during a June 1, 1992, hearing on defendant's motion to suppress statements, was detailed, coherent and responsive to questions. Defendant also engaged in colloquies with the trial judge in which he was responsive and appropriately acknowledged certain rights. Such exchanges do not display any confusion about the nature of the proceedings. We therefore hold that, under the facts of this case, even if defendant's trial counsel had requested a fitness hearing, there is no reasonable probability that defendant would have been found either unable to understand the nature and purpose of the proceedings or unable to assist in his

defense. Thus, defendant has failed to establish that had trial counsel requested a fitness hearing, he would have been found unfit.

Based on the foregoing, we find that the circuit court's dismissal of defendant's amended post-conviction petition with respect to the issue of defendant's fitness for trial was warranted because it failed to make a substantial showing of a constitutional violation.

## II. Conflict of Interest of Trial Counsel

Defendant contends that he made a substantial showing that he was denied the effective assistance of counsel because defense counsel had a conflict of interest at trial. In support of his claim, defendant relies on the following allegations contained in his amended post-conviction petition and accompanying affidavits: (1) that defendant's then girlfriend, Tammy Saif, paid defendant's trial counsel, Thomas Royce, to represent defendant unbeknownst to defendant at the time of trial; (2) that Saif's attorney, William Hedrick, had a professional relationship with Royce; (3) that Hedrick had referred Saif to Royce to represent defendant; (4) that Royce had told Saif to invoke the fifth amendment when called by the State as a witness; (5) that Saif was a potential witness for the prosecution, had she not invoked the fifth amendment; (6) that Saif was a potential alibi witness for the defense, had Royce called her as a witness; and (7) that Saif had been charged with obstruction of justice based on her alibi statements to the police. Defendant maintains that these allegations show that Royce had a professional interest in protecting Saif that conflicted with his obligations to defendant. Accordingly, defendant concludes that his trial counsel acted under a *per se* conflict of interest or, in the alternative, an actual conflict of interest.

It is well established that the sixth amendment right to effective assistance of counsel entitles criminal

defendants to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations. *People v. Lawson*, 163 Ill. 2d 187, 208-09 (1994). A *per se* conflict of interest exists where certain facts about a defense counsel's status, by themselves, are held to engender a disabling conflict. *Lawson*, 163 Ill. 2d at 211. Cases of *per se* conflicts involve situations where defense counsel has some tie to a person or entity that would benefit from an unfavorable verdict for the defendant. *Lawson*, 163 Ill. 2d at 211. To obtain relief based on an alleged *per se* conflict, a defendant must show only that counsel had a contemporaneous conflicting professional commitment to another; however, a defendant need not show prejudice. *People v. Hillenbrand*, 121 Ill. 2d 537, 544 (1988); *People v. Stoval*, 40 Ill. 2d 109, 113 (1968). For example, this court has held that a *per se* conflict of interest exists where defense counsel engages in a contemporaneous representation of the defendant and the State's witness. *People v. Thomas*, 131 Ill. 2d 104, 111-12 (1989).

With these principles in mind, we examine defendant's claim that Royce acted under a *per se* conflict of interest because he was paid by Saif, who was a potential witness for the State and the defense. We hold that no *per se* conflict of interest existed in this case because Royce had no contemporaneous professional relationship with Saif or Hedrick at the time Royce represented defendant. In Royce's affidavit, which defendant attached to his amended post-conviction petition, Royce stated that he was retained and paid by Saif to represent defendant. Royce also stated that he understood that the funds were from Saif, her family, defendant's family, and friends. This affidavit does not indicate that Royce had an obligation to any of the individuals who provided funds. Rather, the affidavit clearly stated that Royce was retained to represent defendant.

Moreover, the trial record contradicts the assertion

that Royce was acting as counsel for Saif or had any professional relationship with Saif or Hedrick. At a hearing held outside of the jury's presence, the State called Saif as a witness. Saif invoked the fifth amendment and refused to testify as to all questions presented by either the State or defense counsel. Saif's attorney, Hedrick, was present for this hearing. Hedrick informed the court that he consulted with Saif about the pending charges against her, and advised Saif to invoke her constitutional right not to testify. The record indicates that, while the State and Hedrick had discussed the fact that Saif would invoke the fifth amendment and the basis for her decision, Royce had no knowledge of such matter. After considering Hedrick's testimony, the circuit court was satisfied that the invocation of the fifth amendment by Saif was justified.

In light of the foregoing affidavit and trial record, we hold that defendant has not made a substantial showing of a *per se* conflict of interest on the part of defense counsel at trial.

Next, we address defendant's alternative argument that defense counsel acted under an actual conflict of interest. Where the trial court is not made aware of a potential conflict of interest, the defendant must demonstrate that an actual conflict of interest adversely affected counsel's performance. *People v. Jones*, 121 Ill. 2d 21, 29 (1988). The defendant must show that counsel actively represented conflicting interests. *Jones*, 121 Ill. 2d at 29-30. Although the defendant need not show that the conflict contributed to his conviction, the defendant must show some specific defect in counsel's strategy, tactics or decision-making attributable to the conflict. *People v. Mahaffey*, 165 Ill. 2d 445, 456 (1995).

Here, defendant has failed to make a substantial showing of an actual conflict of interest. Defendant contends that Royce was acting under an actual conflict

when he did not call Saif as an alibi witness for the defense. According to defendant, Royce did not call Saif as a witness because he was concerned that her alibi testimony could be used against her on the obstruction of justice charge. The trial record refutes defendant's claim that Royce failed to call Saif as an alibi witness because of his relationship with her or Hedrick. When the State called Saif to testify, she invoked the fifth amendment. Saif stated that she would continue to do so and would not answer any questions from either the State or defense counsel. Saif was then questioned by Royce. Royce twice asked Saif if she would answer his questions, and she replied that she would invoke the fifth amendment and decline to answer any questions from Royce. We therefore find that the record shows that Royce's decision not to call Saif as a defense witness was not based on an actual conflict of interest Royce had with Saif, but rather her decision to invoke the fifth amendment as to all future questions.

In sum, we hold that defendant has failed to make a substantial showing that defense counsel at trial acted under any conflict of interest. We therefore affirm the circuit court's dismissal of this claim without an evidentiary hearing.

III. Compliance with Supreme Court Rule 651(c)

Defendant challenges the performance of his postconviction counsel. Defendant contends that postconviction counsel did not comply with Illinois Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)) in that counsel failed to investigate and thereby failed to adequately present an ineffective assistance claim against trial counsel. Defendant bases this contention on postconviction counsel's failure to attach to the amended post-conviction petition affidavits or other evidence to support the claim that trial counsel had been ineffective for not investigating the fingerprint and hair evidence presented by the State at trial.

It is well settled that a defendant has no constitutional right to the assistance of counsel at a post-conviction proceeding. *People v. Guest*, 166 Ill. 2d 381, 412 (1995). The Post-Conviction Hearing Act (Act), however, provides for the appointment of counsel to indigent defendants who file *pro se* post-conviction petitions in capital cases. 725 ILCS 5/122—4 (West 1994); see also 725 ILCS 5/122—2.1(a)(1) (West 1994). This court has interpreted the Act as requiring only a reasonable level of assistance by appointed counsel at post-conviction proceedings. *Guest*, 166 Ill. 2d at 412. In order to assure that reasonable level of assistance, Rule 651(c), which governs appeals from post-conviction proceedings, requires that the record on appeal disclose that post-conviction counsel has consulted with the petitioner to ascertain the petitioner's contentions of constitutional deprivation, has examined the record of the trial proceedings, and has made any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's constitutional contentions. 134 Ill. 2d R. 651(c). Rule 651(c) also provides for post-conviction counsel to file a certificate verifying that counsel has complied with the rule's requirements. *People v. Johnson*, 154 Ill. 2d 227, 238 (1993).

In addition, this court has addressed post-conviction counsel's duty under Rule 651(c) to submit affidavits and other evidence to support allegations raised in the post-conviction petition. In *People v. Williams*, 186 Ill. 2d 55 (1999), the amended post-conviction petition alleged, *inter alia*, that trial counsel had been ineffective for failing to obtain the assistance of a blood-type expert to type the blood on the victim's clothing, and that trial and appellate counsel had been ineffective for failing to challenge the chain of custody of a bullet removed from the victim. Post-conviction counsel did not file an affidavit certifying that he had complied with Rule 651(c). On appeal from

the dismissal of the amended petition, the defendant claimed only that his post-conviction counsel failed to comply with Rule 651(c) because counsel did not support the claims in the amended post-conviction petition with affidavits or other evidence. In rejecting that claim, we noted that post-conviction counsel has no obligation under Rule 651(c) to locate witnesses not specifically identified by the petitioner or to conduct an investigation to discover the identity of witnesses who would provide evidence to support a claim in the post-conviction petition. *Williams*, 186 Ill. 2d at 60-61. On that basis, we determined that post-conviction counsel had no obligation to seek out a blood-type expert or to conduct a fishing expedition for evidence regarding the chain of custody of the bullet. *Williams*, 186 Ill. 2d at 61. Rather, the defendant was responsible for providing such information, and the record was devoid of any indication that the defendant had provided such information to his post-conviction counsel. *Williams*, 186 Ill. 2d at 61. We therefore held that post-conviction counsel's actions did not fall below the reasonable level of assistance required by Rule 651(c). *Williams*, 186 Ill. 2d at 62; *cf. People v. Johnson*, 154 Ill. 2d 227, 242-48 (1993) (holding that post-conviction counsel failed to comply with Rule 651(c) where counsel admitted that he made no effort to investigate claims raised in the *pro se* petition, and where counsel failed to obtain affidavits from witnesses and an expert specifically identified in the defendant's *pro se* petition).

Here, the record shows that post-conviction counsel complied with Rule 651(c). Counsel, in the amended post-conviction petition, raised several constitutional errors, some of which were not raised in defendant's *pro se* petition. Counsel also attached evidence in support of these claims. With respect to the claims involving the fingerprint and hair evidence, the amended post-conviction pe-

tition included both an affidavit from trial counsel that he had not retained a hair expert to analyze the State's hair evidence, and defendant's affidavit that he had asked trial counsel to obtain a fingerprint expert to analyze fingerprint evidence. As in *Williams*, however, there is no indication in the record that defendant provided additional information to post-conviction counsel regarding the existence of fingerprint and hair experts who would have challenged the State's findings. Moreover, the record shows that post-conviction counsel filed a certificate pursuant to Rule 651(c) stating that he had personally consulted with defendant to ascertain his contentions of error. The certificate of compliance also indicates that post-conviction counsel had examined the trial court file and the report of proceedings, and that he had made amendments to the *pro se* petition that were necessary for an adequate presentation of defendant's contentions. Accordingly, we hold that post-conviction counsel complied with the requirements of Rule 651(c) and thus rendered reasonable assistance.

## IV. Witness Recantation

Defendant asserts that, after his amended post-conviction petition was dismissed, an affidavit from Irwin Johnson and an affidavit from Troy Snell were made available to him for the first time. These affidavits concern Johnson's and Snell's testimony at defendant's trial. Johnson testified for the prosecution that defendant had made incriminating statements to him and Snell about the murder of Judy Zeman while they were in a New York City holding cell. Defendant informed Johnson that he used duct tape to cover Judy Zeman's eyes and to tie her wrists, that he took some money and jewelry, and that he set Judy on fire. In Johnson's affidavit, however, he claims to have testified falsely at defendant's trial about the details that defendant told him regarding the Zeman murder. According to Johnson's

affidavit, defendant never said anything about the Illinois murder; rather, Johnson only overheard detectives discussing defendant's involvement in the murder. Unlike Johnson, Snell testified for the defense that, while he, Johnson and defendant were together in a holding cell, defendant indicated that the police had no evidence against him in the Illinois murder. Snell's affidavit merely confirms his earlier testimony that defendant did not incriminate himself. In light of Johnson's and Snell's affidavits, defendant requests that we remand for an evidentiary hearing to ascertain the reliability of the recantations.

Defendant did not raise the issue of alleged witness recantation in his *pro se* or amended post-conviction petition. Instead, defendant first raised this issue in his appeal from the dismissal of his amended post-conviction petition. Because this issue was not raised in defendant's post-conviction petition, it is waived (see 725 ILCS 5/122—3 (West 1994) ("[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived")), and we do not consider it in this appeal. We express no opinion as to the merits of defendant's claim.

V. Constitutionality of the Illinois Death Penalty Statute

Defendant challenges the constitutionality of the Illinois death penalty statute on one basis. Defendant argues that the statute is unconstitutional because it is inevitable that innocent persons will be executed. This argument has been considered and rejected by this court, and we decline to revisit our holding on this issue. See *People v. Bull*, 185 Ill. 2d 179, 211-20 (1998).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Grundy County dismissing defendant's amended post-conviction petition without an evidentiary hearing

is affirmed. The clerk of this court is directed to enter an order setting Wednesday, May 10, 2000, as the date on which the sentence of death, entered by the circuit court of Grundy County, shall be implemented. Defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1998)). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where defendant is confined.

*Affirmed.*

CHIEF JUSTICE HARRISON, dissenting:
Moore's assertion that his conviction was based on the false testimony of prison informants bears directly on his claim that he did not, in fact, break into Judy Zeman's home and then rape and kill her. Newly discovered evidence of actual innocence presents a constitutional question appropriate for post-conviction relief. *People v. Hobley*, 182 Ill. 3d 404, 443-44 (1998); *People v. Washington*, 171 Ill. 2d 475, 489 (1996). The allegations of fact concerning the prisoners' false testimony, when construed liberally in Moore's favor and considered in light of the original trial record and supporting affidavits, are sufficient to make the "substantial showing" required to hold an evidentiary hearing. Dismissal of the post-conviction petition without such a hearing was therefore improper. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998).

Even if I agreed that Moore was not entitled to an evidentiary hearing, I would still hold that his death sentence cannot be allowed to stand. As Moore correctly argues and as I set out in my dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). At a minimum, we should

therefore vacate Moore's sentence of death, and he should be sentenced to a term of imprisonment. Ill. Rev. Stat. 1991, ch. 38, par. 9—1(j).

JUSTICE FREEMAN, also dissenting:

I respectfully dissent.

Defendant filed his petition on July 3, 1995. At that time, the law in this state provided an automatic rule of reversal for those defendants who were entitled to a fitness hearing by virtue of their ingestion of psychotropic drugs. See *People v. Brandon*, 162 Ill. 2d 450 (1994). By the time the parties completed their oral arguments in this case in September 1999, the law had changed from one of automatic reversal to a case-specific inquiry. See *People v. Burgess*, 176 Ill. 2d 289 (1997); *People v. Neal*, 179 Ill. 2d 541 (1997). Unfortunately for defendant, this court has again changed the law in this area by virtue of the recent decision in *People v. Mitchell*, 189 Ill. 2d 312 (2000).

In *Mitchell*, this court held, contrary to prior precedent, that a psychotropic drug claim couched in terms of a denial of due process is not cognizable under the Post-Conviction Hearing Act. The court further held that, in order to establish ineffective assistance of counsel for counsel's failure to request the statutorily mandated fitness hearing, a defendant must show that the outcome of the hearing would have resulted in a finding that defendant was, in fact, unfit. I dissented in *Mitchell*, arguing that the decision was contrary to *stare decisis*. See *Mitchell*, 189 Ill. 2d at 362 (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.). Consistent with that dissent, I continue to believe that the court's action in *Mitchell* was unwarranted.

That said, I wish to stress what I perceive to be the unfortunate and unjust result of the court's decision in *Mitchell*. My colleagues today hold that defendant's allegations and supporting affidavits do not establish that

petitioner would have been found unfit if a hearing had been conducted. 189 Ill. 2d at 535-36. Frankly, I am not surprised that defendant's evidence does not meet this high standard because at the time defendant filed his petition, all that was required under our case law to succeed on such a claim was evidence showing the defendant's ingestion of a psychotropic drug under medical direction at the time of the proceedings. Defendant's claim fails today simply because at the time he pleaded his *Brandon* claim defendant did not have the foresight to know that this court would, several months after the date of his oral argument, raise the quantum of evidence necessary to assert a successful ineffective assistance of counsel claim. This fact leads me to conclude that a majority of this court is uninterested in providing meaningful relief to those defendants who raise this claim via the right to effective assistance of counsel.

JUSTICE McMORROW joins in this dissent.

## Dissenting Opinion Upon Denial of Rehearing

JUSTICE FREEMAN, dissenting:

I respectfully dissent from the denial of rehearing in this case for the reasons expressed in my dissenting opinion filed upon denial of rehearing in *People v. Mitchell*, 189 Ill. 2d 312 (2000) (rehearing denied April 3, 2000).

JUSTICE McMORROW joins in this dissent.