NOTICE
Decision filed 01/25/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190315-U

NO. 5-19-0315

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-1908 |
| | ) | |
| ANTIONE D. PARKER, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's dismissal of defendant's postconviction pleading is affirmed where the defendant's allegations were rebutted by the record, defendant failed to establish prejudice regarding his claim of ineffective trial counsel and failed to overcome the presumption that his postconviction representation was reasonable.

¶ 2    In exchange for the dismissal of four other pending charges in this case, and two pending charges in unrelated matters, the defendant, Antione D. Parker, agreed to plead guilty to armed robbery, which involved a dangerous weapon, that caused great bodily harm (720 ILCS 5/18-2(a)(1) (West 2014)) and accept a sentence of 18 years' imprisonment with the requirement that he serve 85% of the sentence. The defendant appeals the dismissal of his postconviction petition arguing that his constitutional rights were violated because: (1) his trial counsel was ineffective where counsel misrepresented the percentage of time he would have to serve and threatened to

1

withdraw if defendant did not accept the plea; and (2) his postconviction trial counsel was ineffective in failing to support his amended postconviction petition with an affidavit in support of the allegations set forth therein. For the following reasons, we affirm.

¶ 3                                                I. BACKGROUND

¶ 4      Melvin Hayes was shot to death on September 6, 2014. On September 10, 2014, a five-count information was filed against the defendant alleging (1) first degree murder with intent to kill or do great bodily harm (*id.* § 9-1(a)(1)); (2) first degree murder with knowledge that such act created a strong probability of death or great bodily harm (*id.* § 9-1(a)(2)); (3) first degree murder committed during a forcible felony (*id.* § 9-1(a)(3)); (4) armed robbery with a firearm (*id.* § 18-2(a)(2)); and (5) armed violence involving the discharge of a firearm (*id.* § 33A-2(c)) related to the September 6, 2014, incident. On September 18, 2014, the defendant was indicted on those charges by a grand jury.

¶ 5      On April 6, 2017, defendant pled guilty to count IV which was amended to armed robbery (without a firearm) that caused great bodily harm. The amended charge removed the enhancement for the firearm but retained the truth-in-sentencing percentage of 85% based on the great bodily harm element. The agreed sentence for the guilty plea was 18 years in the Illinois Department of Corrections served at 85%. In return for the agreed plea and sentence, counts I, II, III, and V would be dismissed and two other pending and unrelated charges in case Nos. 16-CF-895 and 14-CF-254 would also be dismissed.

¶ 6      At the plea hearing, the State and defendant's trial counsel confirmed the offer was an amendment of count IV and the agreed sentence would be 18 years' imprisonment served at 85%. The court then asked defendant if that was his understanding of the offer and he replied, "It is my

2

understanding." He was then asked if he wished to take the offer being made by the State and he replied, "Yes, ma'am."

¶ 7    At the hearing, defendant confirmed that he was 36 years old and made it through the eleventh grade. He stated he could read and write and was familiar with the English language. He averred that he was not under the influence of any drug or alcohol that would prevent him from understanding what was happening. The court read the charge and then asked defendant if he understood what the State was saying that he did; defendant responded, "I understand." The court stated, "Knowing that the Court will bind itself to the plea negotiations and sentence you as agreed with the offer made, how do you now wish to plead to the amended charge Count IV, armed robbery, guilty or not guilty?" Defendant responded, "Guilty."

¶ 8    Before accepting defendant's guilty plea, the trial court advised defendant of his rights and the range of penalties for the offense. The court noted that defendant hired a private attorney and addressed entitlement to a public defender as well. The court continued with defendant's right to a trial, the sentence range, and explained that a Class X felony had a range of 6-30 years and if defendant had a prior Class X felony in the last 10 years, he could receive an extended term of 30 to 60 years in the Department of Corrections. The court further admonished defendant stating, "This charge is non-probationable, and as previously explained, because of the allegations in the amended indictment it is required that you must serve 85 percent of any sentence that is handed down by this Court, so you would have to serve 85 percent of the 18 years that is being handed down pursuant to the plea negotiations." The court then addressed the removal of the firearm charge and admonished defendant that there would be no "add on" of 15, 20, or 25 years to life, to his sentence, but since the State added "great bodily harm," the requirement to serve 85% percent

3

of the sentence remained. The court then asked if defendant understood the range of penalties for the charge as amended and he responded, "I understand."

¶ 9    Thereafter, the State presented its factual basis for the offense and the defense added a few more facts before stipulating to the factual basis. The court then asked defendant if "anyone forced you or threatened you to get you to plead guilty today?" Defendant said, "No." The court asked if anyone made any promises to him to get him to plead guilty that were not discussed in court and put on the record and defendant said, "No." The court asked defendant if he was entering into the plea of guilty freely and voluntarily and defendant said, "Yeah." The court asked if defendant had a chance to talk about the plea and the consequences of pleading with his attorney and defendant said, "Yes, ma'am." The court then asked, after knowing his rights and the range of penalties, if he still wished to enter his plea of guilty and defendant said, "Yes."

¶ 10    Defendant provided a statement in allocution. Thereafter, the court found that defendant understood the nature of the charges against him, understood the rights that he had, and he made a knowing and voluntary waiver of his rights. The court found that defendant understood the range of penalties that existed for the offense and there was a sufficient basis in fact to enter a plea of guilty. The court entered a finding of guilt and judgment on that finding as to amended count IV. The presentence investigation (PSI) was waived upon agreement of the parties. The decedent's mother provided a statement to the court about her son. Thereafter, the court issued its sentence of 18 years served at 85%, dismissed the other charges and cases, and asked defendant if that was the sentence he negotiated. Defendant replied, "Yes." Thereafter, the court advised defendant of his appeal rights.

¶ 11    On October 31, 2017, defendant filed a postconviction petition that alleged, *inter alia*, that it was his understanding that the plea offer was 20 years served at 50%, not 18 years served at

85%. He stated that if he would have known this, he would not have taken the plea. The petition attached correspondence from defendant's counsel setting forth an offer of 20 years, served at 50%. Defendant's affidavit also claimed that his trial counsel and the state's attorney were going to have a plea agreement for 18 years at 50%. Defendant stated that he advised his attorney that he would rather have the motion to suppress hearing that was set for the next day on April 7, 2017, before he took any plea agreement. He stated that his attorney said that he was making a huge mistake, the hearing would be nonsense, and that counsel threatened to withdraw if defendant did not take the deal. Defendant stated that he only pled guilty because counsel threatened to withdraw. Thereafter, he attested to his innocence and further claimed there was no probable cause for his arrest because there was no grand jury indictment or preliminary hearing. Finally, defendant stated that when the court asked if anyone promised him anything, he said "no" in fear of what his counsel told him and that counsel's withdrawal might impact his "worst-off imprisonment term."

¶ 12     Postconviction counsel was appointed and filed an amended petition on October 15, 2018, that adopted the prior petition and further alleged that defendant initially hired John O'Gara to represent him, but O'Gara was appointed to the bench, so he was introduced to Mr. Gomric and did not enjoy a positive or productive attorney-client relationship with Mr. Gomric. The petition also alleged that defendant suffered from a profound learning disability that deprived him of the ability to think clearly when circumstances suddenly and unexpectedly changed. The petition alleged that defendant was informed by Mr. Gomric prior to the plea that his sentence would be served at 50% and that "Defendant was informed by the court, however, during the plea that the sentence must be served at 85%."

¶ 13     In response, the State moved to dismiss the petition contending that defendant was charged and indicted by the grand jury, a motion to suppress was filed, but the State had already agreed not

to use defendant's confession, and that defendant pled guilty to count IV before the court and indicated that he was voluntarily entering the plea. The motion attached the transcript from the plea hearing.

¶ 14 A second-stage hearing was held on July 23, 2019. The court went through the history of the case, advised defendant of the length of time he could face based on the charges, and addressed the letters defendant wrote to the court that were included in the record. The court noted that while defense counsel indicated that defendant suffered from a learning disability, there were many letters in the court file which caused the court to believe that defendant wrote very well and was able to understand things and recognize issues. In support, the trial court read portions of defendant's March 13, 2017, letter that was filed with the court.

¶ 15 The court also noted that there was a lot of conversation going on between counsel and defendant as well as a lot of negotiations with the state's attorney. There were many hearings where defendant's trial counsel and defendant would go into a room, come back out, and make a discussion on the record. Trial counsel had discussions with defendant prior to the plea. During the plea hearing, the trial court noted they went off the record a couple of times to allow defendant to talk to his attorney because defendant had questions.

¶ 16 The court then went through the transcript and specifically noted defendant's responses to its statements and questions. The trial court noted that it mentioned the 85% sentence four to five times, at least, during the plea hearing and noted those were just the ones on the record. They did not include any off-the-record discussions that were had with the attorneys or defendant when discussing the plea on the day of the plea negotiations, or the discussion by the court of the range of penalties on the charge. The trial court stated:

"It should be clear that the armed robbery charge, as originally charged, included a firearm, which mandated additional time, and I explained that in detail to Mr. Parker that the firearm enhancement carries a 15, 20 or 25 to life enhancement. And during the negotiations, the State took out the firearm which required that additional time, but they added sustained great bodily harm, which made it 85%. That was an amended indictment that was made the day of the plea, and the whole reason they amended the indictment was to take out the firearm and add the great bodily harm. They came to a number of 18 years based on it being 85%."

¶ 17 Thereafter, the trial court noted trial counsel's assistance during the entire case, as well as the plea hearing, and noted that he "was always speaking with his client explaining the issues going on, and it was clear that the way they got to 18 years was to be at 85%, not at day for day." The trial court continued by stating, "So when Mr. Parker claims that he came into this courtroom and thought it was 50% based on what this Court told him during the plea, there is no way he walked out of here thinking he was getting day for day."

¶ 18 The court also addressed the probable cause issue and stated that it was not an issue because the grand jury heard the case. Thereafter, the trial court stated it reviewed defendant's *pro se* petition and the amended petition, found that defendant's petition should not continue, and granted the State's motion to dismiss. Defendant argued with the court that he did not recall the 85% and the court stated that it had just read the transcript. Defendant then argued that his attorney was "in cahoots with the State" and "he was bamboozled." The trial court disagreed and read defendant his appeal rights. The trial court issued a written order setting forth the same facts and denying the order. Defendant's appeal was filed that day along with postconviction counsel's Rule 651 certificate (Ill. S. Ct. R. 651 (eff. Feb. 6, 2013)).

7

¶ 19                                II. ANALYSIS

¶ 20    On appeal, defendant contends that (1) the trial court erred by dismissing his postconviction petition when he demonstrated a substantial violation of his constitutional right to effective counsel where his trial counsel misadvised him about the percentage of time he would have to serve and threatened to withdraw on the day of the plea hearing if defendant did not accept the State's plea; or alternatively (2) he received ineffective assistance of postconviction counsel because (a) his attorney did not attach affidavits to the amended petition; (b) the amended petition added no value to defendant's initial *pro se* petition; and (c) his counsel was unprepared to perform a second-stage postconviction hearing.

¶ 21                        Ineffective Assistance of Trial Counsel

¶ 22    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)) "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Tate*, 2012 IL 112214, ¶ 8. "In a noncapital case, a postconviction proceeding contains three stages." *Id*. ¶ 9. The first stage requires the trial court to independently review the petition, taking the allegations as true, to determine whether " 'the petition is frivolous or is patently without merit.' " *Id*. (quoting *People v. Hodges*, 234 Ill. 2d 1, 10 (2009), and 725 ILCS 5/122-2.1(a)(2) (West 2006)).

¶ 23    The second stage allows for appointment of counsel, the State's appearance in the litigation and requires the court to determine "whether the petition and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *Id*. ¶ 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). "If no such showing is made, the petition is dismissed." *Id*. We review *de novo* a trial court's dismissal of a postconviction petition at the second stage of postconviction

proceedings. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). All facts are viewed as true in the postconviction petition unless they are "positively rebutted by the trial record." *Id.*

¶ 24 To prevail on a claim for ineffective assistance of trial counsel, the defendant must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Domagala*, 2013 IL 113688, ¶ 36. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35. Here, defendant contends that his trial counsel was deficient because he misrepresented the length of the proffered sentence that he would have to serve and threatened to withdraw if defendant did not accept the plea deal. We address the former claim first.

¶ 25 Defendant first contends that his trial counsel misrepresented the length of time he would be required to serve under the plea agreement and further claims that if he had known he had to serve 85%, instead of 50%, he would not have accepted the State's plea agreement. However, defendant's contention is directly rebutted by the trial record. Both trial counsel and the state's attorney advised the court, on the record in the defendant's presence, that the plea agreement sentence was 18 years to be served at 85%. Further, when the court then asked defendant if that was his understanding of the offer, he replied, "It is my understanding." He was then asked if he wished to take the offer being made by the State and he replied, "Yes, ma'am." Defendant's concession that he understood the plea settlement to be 18 years served at 85% rebuts the notion that counsel misadvised defendant of different terms.

¶ 26 Moreover, assuming *arguendo* that counsel misinformed defendant of the terms of the agreement, the court admonished defendant stating, "This charge is non-probationable, and as previously explained, because of the allegations in the amended indictment it is required that you

must serve 85 percent of any sentence that is handed down by this Court, so you would have to serve 85 percent of the 18 years that is being handed down pursuant to the plea negotiations." The court then explained the removal of the firearm charge and explained there would be no "add on" of 15, 20, or 25 years to life, to his sentence, but since the State added "great bodily harm," the 85% percent remained. The court then asked if defendant understood the range of penalties for the charge as amended and he responded, "I understand." The record contains numerous statements by the trial court, his counsel, and the State confirming that defendant would have to serve 85% of the sentence, as well as defendant's affirmative acknowledgment of the sentence. The record therefore affirmatively rebuts defendant's claim that he would not have taken the State's offer if he had known he would have to serve 85% of the sentence.

¶ 27    Nor do we find defendant's reliance on *People v. Morreale*, 412 Ill. 528 (1952), compelling. In *Morreale*, the defendant did not wish to plead guilty and only did so after being assured by both of his defense attorneys and the prosecutor that he would receive probation for the offense. *Id.* at 530. At his sentencing hearing, the defendant was sentenced to a prison term of 5 to 10 years. *Id*. at 529. The defendant subsequently moved to withdraw his guilty plea and vacate the judgment and sentence; the defendant's motion was denied. *Id*. at 531. In the case at bar, the defendant affirmatively acknowledged his understanding that he would have to serve 85% of the 18-year sentence attached to his guilty plea, at the time he entered the guilty plea.

¶ 28    Here, defendant's claimed deficiency is affirmatively rebutted by the record. Further, the trial court cured any prejudice that may have stemmed from counsel's alleged incorrect advice. *People v. Valdez*, 2016 IL 119860, ¶¶ 31-32. As such, there can be no showing that the result of the proceeding would have been different, and no prejudice can be found.

¶ 29 Defendant also contends that he only took the State's offer because his trial counsel threatened to withdraw if he did not accept the offer. However, we need not address whether the record rebuts defendant's claim of counsel's ineffectiveness because no prejudice can be found. "A defendant must satisfy both prongs of the *Strickland* test. Therefore, 'failure to establish either proposition will be fatal to the claim.' " *People v. Simms*, 192 Ill. 2d 348, 362 (2000) (quoting *People v. Sanchez*, 169 Ill. 2d 472, 487 (1996)).

¶ 30 To determine prejudice, we consider the circumstances of defendant's plea and whether it would be rational for defendant to reject his plea bargain. *People v. Brown*, 2017 IL 121681, ¶¶ 48-49. Here, defendant faced not less than 20 and not more than 60 years if convicted on any of the three counts of first degree murder and not less than 6 and no more than 30 years for one count of armed robbery with a firearm and one count of armed violence involving the discharge of a firearm. Further, because a firearm was involved, defendant was also facing mandatory sentencing enhancement of 25 years depending on the convictions, if any, at trial, based on Mr. Hayes' death. At the time the guilty plea was entered, defendant was also facing charges of retail theft over $300 (14-CF-254) and aggravated battery (16-CF-895), both of which were Class 3 felonies with a sentencing range of not less than two and not more than five years (730 ILCS 5/5-4.5-40 (West 2014)), and defendant had four prior felony convictions. Just as in *People v. Brown*, considering "defendant's significant criminal history, it is entirely possible that he would have received sentences on the higher end of those ranges." *Brown*, 2017 IL 121681, ¶ 49.

¶ 31 Further, there was significant evidence against defendant, even without his confession, which the State had already agreed not to use. The remaining evidence included testimony from the Alton Police Department officers who investigated the incident, medical testimony regarding the death of Mr. Hayes, testimony from witnesses who saw defendant fleeing the vacant home

11

after the shots were fired, and multiple independent witnesses who would testify that defendant told them that he arranged the meeting in Alton to buy drugs from the deceased. Included in the witness testimony was decedent's friend, who arrived at the house with Mr. Hayes, and would testify that defendant led them into the house where the shooting occurred as well as a statement from Bruce Bradley, a codefendant in this case, which indicated that defendant and Bradley were armed with at least one dangerous weapon. Finally, testimony would also be provided regarding the volume of marijuana recovered from the home where the incident occurred.

¶ 32    By pleading guilty to count IV, armed robbery (without the use of a firearm), defendant received only a single Class X felony *without the firearm enhancement*, dismissal of any possibility of a murder conviction, dismissal of the armed violence charge, and dismissal of his remaining two felony counts stemming from two other separate incidents. Comparing the potential consequences of going to trial to that provided in the plea agreement, defendant received significantly less prison time and avoided several other charges, in a case where significant evidence was apparent. As such, we conclude that defendant failed to establish the requisite showing of prejudice because he has not shown that a rejection of the plea bargain would have been rational under the circumstances of this case. *Id.* ¶ 52; *People v. Hughes*, 2012 IL 112817, ¶¶ 65-66. Accordingly, we find the trial court did not err in dismissing defendant's postconviction petition and affirm the trial court's dismissal of defendant's postconviction petition.

¶ 33                    Ineffective Assistance of Postconviction Counsel

¶ 34    Defendant also contends that his postconviction counsel was ineffective. Specifically, defendant contends that his counsel provided unreasonable assistance where (a) counsel failed to attach affidavits to the amended postconviction petition, (b) the amended petition did not add

12

anything of substance or value to defendant's initial *pro se* petition, and (c) his counsel was unprepared to perform a second-stage postconviction hearing.

¶ 35    Here, the postconviction counsel prepared an amended complaint that adopted defendant's prior *pro se* allegations which were supported by exhibits and defendant's affidavit. Postconviction counsel also included eight additional allegations that addressed defendant's previous relationship with both his initial and subsequent trial counsels, and affirmatively stated that defendant had a "profound learning disability" that "deprive[d] him of the ability to think clearly when circumstances suddenly and unexpectedly changed."

¶ 36    The Act requires "only a reasonable level of assistance by appointed counsel at post-conviction proceedings." *People v. Moore*, 189 Ill. 2d 521, 541 (2000) (citing *People v. Guest*, 166 Ill. 2d 381, 412 (1995)). "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Here, following the trial court's dismissal of defendant's postconviction pleading, counsel filed a proper Rule 651 certificate. There is therefore a rebuttable presumption that defendant's postconviction counsel provided reasonable assistance.

¶ 37    "A defendant has the burden of overcoming the presumption by demonstrating that counsel failed to substantially comply with the duties set out in Rule 651(c)." *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 36. Whether postconviction counsel provided the reasonable level of assistance is reviewed *de novo*. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 31.

¶ 38    Here, defendant contends that his counsel was ineffective because he failed to provide evidentiary support for the amended allegation addressing defendant's learning disability. In support, defendant claims that counsel could have included a copy of the formal medical diagnosis

13

or attached an affidavit from defendant, his school counselors, or his past teachers regarding the disability; however, we do not find defendant's argument compelling.

¶ 39   "In the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *People v. Johnson*, 154 Ill. 2d 227, 241 (1993). The Illinois Supreme Court has addressed instances where postconviction counsel did not support the petitions with affidavits or other evidence. *People v. Williams*, 186 Ill. 2d 55 (1999); *People v. Johnson*, 154 Ill. 2d 227 (1993); *People v. Stovall*, 47 Ill. 2d 42 (1970).

¶ 40   In *People v. Williams*, the court noted that postconviction counsel was not obligated under Rule 651(c) to locate witnesses who were not specifically identified by the petitioner or conduct an investigation to determine the identity of witnesses who would provide evidence to support a claim in the postconviction proceeding. *Williams*, 186 Ill. 2d at 60-61. Instead, the court found that the defendant was responsible for providing such information and if the record was devoid of any indication that the defendant provided such information, then postconviction counsel's representation did not fall below the reasonable level of assistance required by Rule 651(c). *Id*. at 61-62.

¶ 41   The finding in *Williams* was consistent with the court's prior position in *People v. Johnson* that confirmed postconviction counsel had "an obligation to present a *petitioner's claims* in appropriate legal form," but was "under no obligation to actively search for sources outside the record that might support general claims raised in a post-conviction petition." (Emphasis in original.) *Johnson*, 154 Ill. 2d at 247. The obligation to provide postconviction counsel with specific information regarding the identity of a witness or what testimony such witness may

14

provide was firmly placed on the defendant. *Id*. at 247-48. Only after such information was provided would the postconviction counsel have an "obligation to attempt to contact those witnesses" to determine if their testimony or information would support the claim raised in the postconviction petition. *Id*. at 248. Because the presumption in *Johnson* was "flatly contradicted by the record" which included an affidavit filed by postconviction counsel that affirmatively stated he "made no effort to investigate the claims raised in the defendant's post-conviction petition" or to "obtain affidavits from any of the witnesses specifically identified in the defendant's *pro se* petition," postconviction counsel provided unreasonable assistance under the Act. *Id.* at 243.

¶ 42    Here, while postconviction counsel was aware that defendant had a learning disability and took IEP classes while attending school, there is no indication in the record that defendant provided his postconviction counsel with the name of any physician who diagnosed the condition, any medical facility that might contain the formal diagnoses of the learning disability, the name of any school defendant attended in which he took IED classes, or the names of any of his teachers at any school that might be familiar with his learning disability.[1] As such, "there is no showing of the existence of any facts or evidence on which such affidavits could have been founded." *Stovall*, 47 Ill. 2d at 46.

¶ 43    "Absent a showing of available material for supporting affidavits, a failure to present affidavits obviously cannot be considered a neglect by the attorney." *Id.* Accordingly, we find that defendant failed to overcome the presumption, established by the Rule 615 certificate, that his postconviction counsel's assistance was reasonable.

---

[1]Defendant's trial counsel and the State waived the need to obtain a PSI which may have contained some of the missing information. Defendant did not claim in either his *pro se* or the amended postconviction petition that his trial counsel was ineffective in effectuating this waiver.

¶ 44    Finally, we note that the trial court's dismissal of defendant's postconviction petition was not premised on the lack of supporting documentation related to defendant's learning disability but was instead based on the trial court's finding that defendant's postconviction allegations were affirmatively rebutted by the record. Our own review of the record fails to reveal a contrary conclusion.

¶ 45    Defendant's contentions that his postconviction counsel's performance was unreasonable because (1) the amended petition did not add anything of substance or value to defendant's initial *pro se* petition and (2) his counsel was unprepared to perform a second-stage postconviction hearing were not argued in defendant's initial brief. Therefore, they were forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). As such, defendant's inclusion of the latter argument in his reply brief and at oral argument was prohibited. *Id*.

¶ 46    Therefore, for the reasons set forth herein, we find that defendant failed to overcome the presumption that his postconviction counsel's assistance was reasonable.

¶ 47                                III. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the trial court's dismissal of defendant's postconviction petition.

¶ 49    Affirmed.